### HARRISON ENGINEERING & CONSTRUCTION CORPORATION et al. v. UNITED STATES.

No. 46913.

Court of Claims.

Nov. 4, 1946.

Elmo B. Hunter, of Kansas City, Mo. (Sebree, Shook & Gisler, of Kansas City, Mo., on the brief), for plaintiffs.

James B. Spell, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The plaintiffs on June 13, 1942, entered into a contract with the United States to construct an airfield at Winfield-Arkansas City, Kansas. The contract fixed unit prices for the several kinds of work and materials to be furnished by the plaintiffs. It also provided that if after the date of the contract the federal government or any state or local government should impose, remove, or change any tax directly applicable to the materials or work covered by the contract or to the importation, production, processing, manufacture, construction or sale of such materials or work, which tax had to be paid by the plaintiffs, the contract price should be increased or diminished by the amount of the change in the tax.

At the time the contract was entered into the state of Kansas had a statute providing for a compensating tax. However, on January 26, 1942, the State Commission

of Revenue and Taxation had made an order which exempted from any sales tax or compensating tax the sale or use of all tangible personal property used in the construction of a war project, where title to the completed project vested in the federal government. This order was in effect when the contract here in question was made, and was known to the plaintiffs and to the agents of the United States. In fact, even before the order of the Commission of Revenue of January 26, 1942, the compensating tax had never been applied or attempted to be applied to situations such as those covered by the order, although the tax statute had been in effect since 1937.

The plaintiffs completed their contract about January 1, 1943. The United States, through the Engineer's Office, War Department, made up a detailed estimate of the amount due the plaintiffs under the contract. This estimate did not include any item for any compensating tax under the Kansas statute. On August 24, 1943, the United States paid to the plaintiffs the exact amount of the detailed estimate, the plaintiffs having executed a general release to the United States dated August 4, 1943, which recited that, the contract "having been completed and finally accepted the United States, its officers and agents, are hereby released from all claims and demands whatsoever, arising under or by virtue of said contract except as follows: Final Payment Estimate in amount of $130,377.60."

On August 12, 1942, the state of Kansas rescinded its order of January 26, 1942, and on December 4, 1943, assessed against the plaintiffs a compensating tax in the amount of $5,587.05 on materials and supplies which had been used by the plaintiffs in performing the contract in question. Neither the plaintiffs nor the United States knew of the rescission by the state of Kansas of the order of January 26, 1942, until some time after the giving of the release and the payment referred to above.

When the compensating tax was assessed against the plaintiffs, they notified the United States of the assessment and receiving no notice of objection, paid the tax. On December 13, 1943, they filed with the United States District Engineer's Office at Kansas City, Missouri, their claim for reimbursement of the amount of the tax. That office recommended to its higher headquarters that the plaintiffs be reimbursed. That higher headquarters recommended to the Chief of Engineers, United States Army, that the plaintiffs be reimbursed. However, on January 29, 1944, 'the United States, through its District Engineer's Office at Kansas City, Missouri, advised the plaintiffs that the War Department had no authority to decide a claim made subsequent to final payment on a contract, and recommended that the plaintiffs present their claim to the General Accounting Office of the United States. The plaintiffs did so present their claim, but that office ruled that though, had it not been for the release, the plaintiffs would have been entitled to the $5,587.05 claimed, the release made it impossible to allow the claim.

The Government has demurred to the plaintiffs' petition, which states the facts recited above. The plaintiffs ask either (1) that the release be so interpreted as not to cover the claim in question, thus making the release irrelevant, or (2) that this court reform the release to make it conform to the intention of the parties, which, the plaintiffs say, was that the Government would pay the plaintiffs for all amounts expended by them in accordance with the terms of the contract. Under either alternative, the plaintiffs ask for judgment for the amount of the tax in question.

█ We think the release as written should not be construed as the plaintiffs request. By its terms it covered and was intended to cover all the claims that the plaintiffs had arising out of this contract. The difficulty is that this intention was induced by a mistake of the parties as to the completeness of the list of items which, added together, made up the total amount paid when the release was given. The release therefore, unreformed, is a release of the claim here sued upon.

█ We think, however, that the reformation which the plaintiffs request should be granted. The purpose of this equitable remedy is to relieve a litigant in a proper case from the legal handicap of a document

to which he has committed himself inadvertently and without comprehension of its effects upon his rights. The invention of the remedy by equity was a recognition that legal documents, however formal, must, in some circumstances, give way to fairness and justice. One of the circumstances in which the doctrine applies is when the parties to the document are both mistaken as to some fact, and because of their mistake, they make an agreement which they would not have made had they not been so mistaken. The plaintiffs' petition recites that kind of a situation. The fact was that the plaintiffs had incurred a tax liability to the state of Kansas in the amount here in suit, but both they and the agents of the Government were unaware of the existence of that liability. This unawareness, or impression that there was no such liability, was a mistake.

When the parties made their settlement, by payment and release, it was their intention that the plaintiffs should be paid all that was agreed to be paid to them under the contract. There was no disagreement or dispute or occasion for or thought of compromise. The Government's agents had written the itemized account, added the items, and were ready to pay the sum. The plaintiffs, like the Government, supposed that the list was complete, and were willing to accept the sum and give a receipt in full, or release. But the Government would not have asked that the sum be accepted as payment in full, and the plaintiffs would not have so accepted it, except for their mistaken belief that it included all their expenses. We think that, in the circumstances, the intention of the parties that the plaintiffs should be paid what was due them under the contract was the dominant intention of the settlement, and that the acquisition of the release, which would enable the agents of the Government to mark the transaction closed was, while conventional and desirable, not nearly so important. The release, therefore, should not stand in the way of the plaintiffs' claim.

Among the cases cited by the Government as precedents for denying reformation of the release here involved, the only case which seems to us to be fairly comparable is that of Wilson Body Co. v. United States, 59 Ct.Cl. 611. In that case the Government agreed to pay the contractor for the manufacture of certain equipment on a cost plus basis. After the Armistice in 1918 the Government, pursuant to the contract, terminated it and requested the contractor to prepare a statement of its costs so that settlement could be made. The contractor attempted to obtain from one of its suppliers an accurate invoice for some supplies furnished, and after several efforts received a statement that the amount was $583.80. This figure was put into the settlement, which aggregated more than $250,000. The contractor gave to the Government a broad and general release similar to the one given by the plaintiffs in this case. Thereafter the supplier presented and finally enforced in a state court a claim against the contractor for $3,793.23 for the supplies furnished in connection with this contract. This court held that the contractor was bound by its release and could not recover the additional amount which entered into its costs. However, in the negotiations leading up to the settlement, the contractor had succeeded in having the agents of the Government insert an amount of $15,000 to cover additional costs that might subsequently come in. This provision had been expressly disapproved in Washington and the settlement omitted such a provision. It is apparent, therefore, that in the Wilson case the parties discussed and regarded as important the finality of the release as to costs of which the parties were, at the time of the settlement, unaware. The case is, in that essential respect, distinguishable from the instant one.

■ The Government says that the plaintiffs should be denied equitable relief because they were negligent in not learning of the later order of the Kansas Commission of Revenue which made them liable to the tax. We think the plaintiffs were somewhat negligent. But mere negligence, not amounting to the breach of a positive legal duty, seems to be no bar to reformation of a contract. Home Insurance Company v. Sullivan Machinery Co., 10 Cir., 64 F.2d 765; certiorari denied, 290 U.S. 633, 54 S.Ct. 51, 78 L.Ed. 551.

The defendant's demurrer is overruled.

It is so ordered.