Elmer Wesley DUHAME, Also Known as E. W. Duhame, Doing Business as E. W. Duhame Construction Company, Fisher Contracting Co., a Corporation, Tiffany Construction Company, a Co-Partnership Composed of Algernon Eugene Tiffany and Hervert Chassee Tiffany, and Arizona Sand & Rock Company, a Corporation,

v.

The UNITED STATES.

No. 516-52.

United States Court of Claims.

Dec. 6, 1955.

John B. Anson, Los Angeles, Cal., for plaintiffs. Wm. L. Murphey was on the briefs.

Lino A. Graglia, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

This suit, as originally filed, included seven causes of action and four plaintiffs. On the Government's motion, four of the seven causes of action were dismissed on March 2, 1954. Duhame v. United States, 119 F.Supp. 192, 127 Ct.Cl. 679. The present proceeding relates to the three remaining causes of action, which are the second, fourth, and sixth causes of action of the complaint, and in which the plaintiffs are, respectively, Elmer Wesley Duhame, doing business under the name of E. W. Duhame Construction Company, Fisher Contracting Co., and Tiffany Construction Company.

All of the plaintiffs performed construction contracts with the United States in the State of Arizona during the period 1941–1943. After they had completed their contracts and settled with the Government, the State of Arizona required them to pay certain taxes on the proceeds of these contracts. The plaintiffs were surprised and disappointed by the imposition of these taxes, for although they were imposed pursuant to a statute enacted in 1935, the plaintiffs had been led, by the conduct and official statements of the state taxing authorities, to believe that the statute was not applicable to contractors who constructed facilities for the United States. Prior to August 15, 1941, the Arizona State Tax Commission had never attempted to apply the statute to such contracts and on that date the Commission issued a regulation explicitly exempting from the tax contracts with the United States. On April 15, 1943, the Commission rescinded its regulation of August 15, 1941, and, for the first time, imposed retroactively a tax of one percent, on the gross proceeds of construction contracts with the United States, including the contracts of these plaintiffs. Before the Commission gave notice of this change, the plaintiffs Duhame and Fisher had settled with the Government, executing general releases of all claims related to their contracts.

The contract of the plaintiff Duhame was a lump-sum contract, and the Government would not be liable for any expense which he incurred in performing it, unless the contract provided that the Government should be so liable. Duhame points to the following provision of the contract:

"37. Permits. (1) A contractor shall not be required to obtain building or other permits or licenses."

This provision would seem to apply to the various building permits or licenses that are customarily required by states or municipalities in connection with construction. Whether Duhame was required to obtain such permits or licenses does not appear, and this case is not based upon any claim concerning them. Section 73–1312 of the Arizona Excise Revenue Act provides that any person having gross proceeds of sale upon which a privilege tax is imposed must, in order to engage in or continue in business, obtain a privilege license and pay one dollar for it. Duhame urges that this provision, in connection with the contract provision quoted above, resulted in a promise by the Government to pay the privilege tax if he was subjected to it.

■ We see little merit in Duhame's contention. He is not suing for the one dollar which he paid for the license, but for the privilege taxes which he was obliged to pay on the gross proceeds of his contract. The idea that when the Government said in the contract that the contractor would not be required to obtain building or other licenses or permits, it intended to guarantee that if he was subjected to a state tax, not otherwise mentioned in the contract, in connection with which tax he would have to pay a dollar for a license, the Government would pay both the dollar and the tax, seems to us to involve a *non sequitur*. Duhame was subjected to a surprising expense, but his contract did not provide for reimbursement by the Government.

■ Both the Fisher and Tiffany contracts provided expressly that if federal, state, or local taxes were imposed after the date of the opening of bids, the contract price would be adjusted to take account of the change. Under this provision these plaintiffs were entitled to have the Government reimburse them for the privilege taxes imposed by the State. But, the Government says, the plaintiff Fisher lost its right to reimbursement by the execution, on November 15, 1942, of a general final payment release of all claims against the Government arising out of the contract. In Harrison Engineering & Construction Corp. v. United States, 107 Ct.Cl. 205, 68 F.Supp. 350, we considered the same problem and concluded that a release did not, where both parties were in ignorance of an additional item of indebtedness, and had no intention to pay or accept less than was

**744**

justly due, cancel the unknown item. The Government asks us to overrule the Harrison decision, but, upon reconsideration, we are content with it.

As to both Fisher and Tiffany, the Government asserts that their causes of action are barred by the Statute of Limitations. It says that the Government's liability arose when the tax was "imposed or changed" which was on April 15, 1943, when the Arizona State Tax Commission changed its regulation and gave notice that it would impose the tax on persons such as these plaintiffs. If, the Government says, the cause of action did not accrue on April 15, 1943, it did accrue on April 10, 1946, as to Fisher, and in September 1946 as to Tiffany, those being the times when the State of Arizona actually assessed the taxes against these plaintiffs. The petition was not filed until October 16, 1952, more than six years after all these dates.

The plaintiffs say that according to the contract, three things had to happen before they could have sued the Government, (1) the tax must have been "imposed or changed"; (2) the plaintiffs must have paid the tax; and (3) the Government must have refused reimbursement by refusing to adjust the contract price on payment vouchers. They say that Fisher did not pay the tax until April 1947 and Tiffany did not pay its tax until some time after March 13, 1947. The Comptroller General did not refuse reimbursement to Fisher until January 15, 1951, nor to Tiffany until some time in March 1947 or thereafter. All of these times were less than six years before the petition was filed.

■■ It may be true that the plaintiffs could not have successfully sued the Government for these taxes without first having paid them and presented vouchers for reimbursement. But it cannot be true that one who has a claim against another which he can perfect and make actionable by acts within his own power can keep the claim alive indefinitely by merely refraining from doing those acts.[1] Here, at least upon the assessment of the taxes against these plaintiffs, they could have paid them and presented their vouchers for reimbursement, to which it seems they were entitled. If reimbursement had been refused, or the Comptroller General had not acted within a reasonable time, they could have sued. But they could not toll the Statute of Limitations merely by refraining from doing what was completely within their own power to do. See Dawnic Steamship Corp. v. United States, 90 Ct.Cl. 537, 578.

The claims of the plaintiffs Fisher and Tiffany are barred by the Statute of Limitations. The petition will be dismissed in its entirety.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.

1. As to the application of the Statute of Limitations to certificates of deposit, see 23 A.L.R. 7; 128 A.L.R. 157. As to its application to promissory notes payable on demand see 44 A.L.R. 397.