ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -                                              )
                                                        )
Herren Associates, Inc.                                 )        ASBCA No. 62706
                                                        )
Under Contract No. N00178-04-D-4062-NS01                )

APPEARANCE FOR THE APPELLANT:              Eden Brown Gaines, Esq.
                                             Brown Gaines, LLC
                                             Washington, DC

APPEARANCES FOR THE GOVERNMENT:            Craig D. Jensen, Esq.
                                             Navy Chief Trial Attorney
                                           Libbi J. Finelsen, Esq.
                                           Philip Hadji, Esq.
                                             Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE O'CONNELL

The government moves for summary judgment contending, among other things, that appellant's claim is barred by the statute of limitations. The board grants the motion.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

The following facts are undisputed or uncontroverted.[1]

1. On April 5, 2004, the Naval Surface Warfare Center, Dahlgren, awarded J.L. Herren Associates, P.C., an indefinite delivery, indefinite quantity, contract for the provision of engineering, technical, and programmatic support services (R4, tab 1 at 1-2, 6-7). The contract included a clause entitled: Submission of Invoices (Cost-Reimbursement, Time-and-Materials, Labor-Hour, or Fixed Price Incentive) (JUL 1992). This clause provided, among other things, that "[t]here shall be a lapse of no more than thirty (30) calendar days between performance and submission of an interim payment invoice." (*Id.* at 72) The contract also included Federal Acquisition

---

[1] Appellant responded to all 17 of the government's proposed undisputed facts by stating either "undisputed" or "immaterial." The Board advised appellant in an order dated September 13, 2021, that we would interpret "immaterial" to mean "admit but immaterial." Appellant has not challenged this interpretation.

Regulation (FAR) FAR 52.216-7, ALLOWABLE COST AND PAYMENT (DEC 2002), and FAR 52.243-2, CHANGES—COST-REIMBURSEMENT (AUG 1987) ALT I (APR 1984) (*id.* at 87-88).

2. On February 12, 2009, the Space and Naval Warfare Systems Command awarded Task Order NS01 on the above-captioned contract to appellant, now listed as J.L. Herren & Associates (Herren) (gov't statement of undisputed material fact (GSUMF) ¶ 1; R4, tab 2 at 1).[2] The task order required Herren to provide support services to the Navy Enterprise Resource Planning Program Management Office for various activities including acquisition management, contract management, and business/financial management (R4, tab 3 at 11). The performance period, including option years, was February 12, 2009, to April 11, 2014 (*id.* at 23-24; GSUMF ¶ 4).

*Increased Fee Claim*

3. Herren's proposal listed the prime and subcontractor employees who would perform the work. The proposal included the labor category and rate for each employee. (GSUMF ¶ 5)

4. Task order clause B-2, Fee Determination and Payment (Level of Effort), included a chart that listed by contract line item number (CLIN) the estimated number of direct labor hours to be expended and the fixed fee[3] for that CLIN. The clause provided that the government would pay Herren the fee at an hourly rate that had been calculated by dividing the fixed fee amount by the estimated number of hours. For example, for CLIN 1001, the chart included an estimated 44,415 hours and a fixed fee of ███████, resulting in an hourly fee of ████. (R4, tab 3 at 9; GSUMF ¶ 2)

5. The clause also provided that the government would pay the fixed fee on each invoiced labor hour "provided that the total of all such payments shall not exceed eighty-five percent (85%) of the fixed fee specified under the task order." It provided that any fee balance would be paid at final payment. (R4, tab 3 at 9)

6. On February 12, 2009 (the first day of performance), the government provided Herren a staffing matrix that included four people who were not in Herren's proposal (GSUMF ¶ 6). Herren alleges that at that time it requested the contracting

---

[2] In 2013, task order Mod. 1A changed appellant's name to Herren Associates, Inc. (R4, tab 90).

[3] The "fee" is an amount *in addition* to the actual costs of the labor for which the contractor is separately reimbursed under the contract.

officer make an equitable adjustment (*id.*). Neither party has identified a document that would substantiate such a request, nor any response from the contracting officer.

7. More than 10 years later (and five years after completing performance), on September 19, 2019, Herren submitted a certified claim to the contracting officer. Herren contended, among other things, that the Navy had requested the services of more senior personnel than those offered in Herren's proposal.[4] Herren sought an increase of ▮▮▮▮▮▮▮ to the fixed fee due to the increased labor costs, based on its bid fee of ▮▮▮▮. (R4, tab 81 at 2; GSUMF ¶¶ 14-16) In a subsequent email to the contracting officer, Herren stated that the highest senior analyst in its proposal had been compensated at ▮▮▮▮▮ per hour while the added personnel cost ▮▮▮▮▮▮ in the base year (R4, tab 88 at 2). Herren sought an increase of ▮▮▮ for each of the hourly fee rates, including an increase in the CLIN 1001 rate from ▮▮▮ to ▮▮▮/hour (*id.* at 4).

8. Herren has admitted that all of the labor hours for which it seeks an increased fixed fee were performed before September 19, 2013 (GSUMF ¶ 14).

9. In a July 27, 2020, final decision, the contracting officer denied this element of Herren's claim. Among other things, the contracting officer stated that clause B-2 did not provide for a change in the hourly fees based on the labor mix. (R4, tab 87 at 8)

*Facilities Cost Claim*

10. Herren submitted an amended claim on April 27, 2020, in which it sought ▮▮▮▮▮▮▮▮ for the cost of rented office space, plus general and administrative costs that brought the total amount to ▮▮▮▮▮▮▮ (R4, tab 82 at 2). Herren contended that the contract at CLINs 6002, 6202, and 6302 provided for the rental of such space (*id.* at 1). (In response to a government interrogatory, Herren also identified CLINs 3002 and 6102 (mot., ex. A at 19)).

11. Herren attached to the claim an unsigned sublease dated February 27, 2009, between it and the National Crime Prevention Council, Inc., that had a base period of March 16, 2009, to March 15, 2011. The sublease provided for annual base rent of ▮▮▮▮▮▮ in the first year and ▮▮▮▮▮▮▮ in the second year, payable in advance in equal monthly installments. Herren seeks only a portion of the second year of rent from the government, based on actual payments of ▮▮▮▮▮▮▮ in 2009 and

---

[4] This opinion discusses only the claim issues that the contracting officer did not resolve in favor of Herren.

███████ in 2010. (R4, tab 82 at 4-5, 17, 21-23[5]) Herren has identified the period for which the government is liable for rent as March 16, 2009, to July 23, 2010 (GSUMF ¶ 17; mot., ex. A at 19-20).

12. The record, at tabs 23 to 78, contains the invoices that Herren submitted to the government between May 2009 and April 2014, along with a final invoice in August 2018 (R4, tab 80). Herren never invoiced the government for the cost of the leased space (GSUMF ¶ 13; app. opp'n at 9). Herren admits that it made all rental payments prior to April 27, 2014 (GSUMF ¶ 17).

13. In the final decision, the contracting officer denied this portion of the claim because "Herren knew or should have known about the Government's potential liability for the facility rental costs more than six years before the submission of Herren's Amended Certified Claim on April 27, 2020" (R4, tab 87 at 9).[6]

## DECISION

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When considering a motion for summary judgment, the Board's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Id.* at 249. Conclusory statements and mere denials are not sufficient to ward off summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987).

The statute of limitations is an affirmative defense for which the moving party bears the burden of proof. *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315, 1319-22 (Fed. Cir. 2014).

Pursuant to the Contract Disputes Act (CDA), "Each claim by a contractor against the Federal Government relating to a contract. . . shall be submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). When the parties entered into this contract in 2004, the FAR provided that:

---

[5] Citations are to the page in the .pdf file.

[6] We emphasize that we are not making any findings of fact as to whether Herren actually rented the office space in question or used it to perform work in support of this contract. The government contends that while there were several CLINs that could have provided for the rental of space, it either did not exercise them or provided only minimal funding (gov't reply at 5, 15-16).

4

"Accrual of a claim" means the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred.

FAR 33.201.

The events fixing liability "should have been known" when they occurred unless they were either concealed or inherently unknowable at the time. *Alion Sci. & Tech. Corp.*, ASBCA No. 58992, 15-1 BCA ¶ 36,168 at 176,489 (citing *Raytheon Missile Sys.*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,017). A claimant need not have actual knowledge of all the relevant facts for a cause of action to accrue. *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1381 (Fed. Cir. 2012). Only facts that could not reasonably be known by the claimant postpone claim accrual. *Alion*, 15-1 BCA ¶ 36,168 at 176,489 (citing *United States v. Commodities Export Co.*, 972 F.2d 1266, 1272 (Fed. Cir. 1992)).

With respect to the increased fee claim, the claim must have accrued on or after September 19, 2013, which is six years before the date of the claim. All events that fixed the liability of the government occurred long before that, in February 2009, when the government changed the labor mix (SOF ¶¶ 6-7), or at the latest when Herren actually paid the higher cost workers after performance began. Herren does not contend otherwise.

Rather, Herren contends that because this was a cost reimbursement contract it was permissible for it to wait 10 years after performance commenced to submit its claim. Herren relies on the Allowable Cost and Payment clause, FAR 52.216-7 (SOF ¶ 1), and task order clause B-2 (app. opp'n at 8-9). Herren is correct that FAR 52.216-7 contains provisions for establishing final indirect cost rates after the end of each fiscal year and is also correct that clause B-2 provided that the government would pay up to 85% of the fixed fee during performance and pay any balance at the time of final payment (SOF ¶ 5). But these clauses provide no excuse for Herren's delay in seeking a higher fee. As described above, clause B-2 lists the specific hourly rates to which Herren was entitled (SOF ¶ 4). The clause contains no language that provides for an increase in the fee if the labor mix changed and thus contains no language that would toll the time for requesting such an increase to final payment. Herren's theory seems to be more in the nature of a change or constructive change (although it does not describe it as such) but neither FAR 52.216-7, nor clause B-2, nor the Changes clause, FAR 52.243-2, provide for the tolling of the statutory period for a

changes claim on a cost reimbursement contract. Herren's fixed fee claim is time barred.

Herren waited even longer, more than 11 years, to submit its claim for the leased space (SOF ¶ 10). The undisputed facts are that Herren signed a lease in 2009, obligated itself to make the relevant payments in 2009 and 2010, and submitted a claim in 2020 (SOF ¶¶ 10-12). Herren contends, however, that the contract did not require that it invoice these costs "at any specific time or at any level of frequency" (app. opp'n at 9). Herren contends that it "was free to bill for direct costs at contract closeout" (*id.*). Even if Herren is accurately describing the contract's provisions about invoicing, the Board does not agree with its conclusion that the statute of limitations is tolled until contract closeout.

For reasons that are not explained in the record, Herren never sought payment for the leased space in any of the dozens of invoices it submitted during contract performance, even though nothing prevented it from doing so (SOF ¶ 12). As the Court of Claims once stated, "it cannot be true that one who has a claim against another which he can perfect and make actionable by acts within his own power can keep the claim alive indefinitely by merely refraining from doing those acts." *Duhame v. United States*, 135 F. Supp. 742, 744 (Ct. Cl. 1955).[7] Thus, contractors cannot "toll the Statute of Limitations merely by refraining from doing what was completely within their own power to do." *Id.* Consistent with this decision, the Board has dismissed appeals where the contractor failed to submit an invoice (or submitted an incomplete invoice) and then waited more than six years to file a claim. *URS Fed. Servs., Inc.*, ASBCA No. 62475, 21-1 BCA ¶ 37,826; *Anis Avasta Constr. Co.*, ASBCA No. 61926, 20-1 BCA ¶ 37,743.

In any event, the Board does not agree that the contract contained no prescription for the timing of invoice submission. The contract provided that "[t]here shall be a lapse of no more than thirty (30) calendar days between performance and submission of an interim payment invoice." (SOF ¶ 1) The Board interprets this clause to be broad enough that it covers the rental and operation of leased space and thus required Herren to invoice the government within 30 days after the date that it became obligated for each payment.

---

[7] Claim accrual depends on factors such as the specific provisions of the contract. The Federal Circuit has held, for example, that when a contract required the contractor to seek an exemption from a foreign tax, the claim did not accrue immediately upon the foreign government's assessment of the tax. *Triple Canopy, Inc. v. Sec'y of the Air Force*, 14 F.4th 1332 (Fed. Cir. 2021). No such considerations apply in this appeal.

6

Herren's claim for the lease of office space is time barred.

CONCLUSION

The government's motion for summary judgment is granted.

Dated:  March 29, 2022

MICHAEL N. O'CONNELL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62706, Appeal of Herren Associates, Inc., rendered in conformance with the Board's Charter.

Dated:  March 29, 2022

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals