**URBANIZADORA SANTA CLARA, S. A.**

v.

**The UNITED STATES.**

No. 270–74.

United States Court of Claims.

June 25, 1975.

William H. Fox, Washington, D. C., attorney of record, for plaintiff.

Bruno A. Ristau, Washington, D. C., with whom was Asst. Atty. Gen. Carla A. Hills.

Before COWEN, Chief Judge, DURFEE, Senior Judge, and NICHOLS, Judge.

ON DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

On January 1, 1966, defendant acting through the United States Air Force leased[1] from plaintiff, Urbanizadora Santa Clara, S. A., a Spanish real estate corporation, a housing project in Seville, Spain. The housing project consisted of some 232 buildings plus garden and open space, and contained 494 residential housing units. The lease, which expired by its own terms on September 26, 1968, provided for monthly rental payments of $51,870 and contained no renewal provisions. Prior to the expiration of this lease, the parties conducted negotiations in an attempt to execute a follow-on lease. While these negotiations resulted in an agreement between the parties' negotiating representatives for an additional rental period at the increased monthly rate of $62,738, the agreement was never approved, as required, by the Secretary of the Air Force or his duly authorized representative. At the expiration of the lease, on September 26, 1968, the Air Force held over in possession of the housing development, and continued to pay rent at the previous rate of $51,870 under the now expired lease.

Plaintiff, on March 3, 1969, brought a civil action in Municipal Court No. 6 of

---

1. The lease agreement was designated Contract No. AF61 (322)–1050.

Seville, Spain seeking an eviction order against the United States for the leased premises. The Municipal Court asserted jurisdiction under the Spanish Civil Code, and denied plaintiff's claim, as under the Spanish Law of Leases the United States as lessee by the original lease could validly hold over under that lease. Plaintiff subsequently appealed the decision of the Municipal Court to the Court of First Instance of Seville, the appellate tribunal over the Municipal Court. That court revoked the judgment of the Municipal Court on February 18, 1970, finding that the Municipal Court's assertion of jurisdiction under the Spanish Civil Code was critically defective. The appeals court, in revoking the judgment below, noted that jurisdiction did exist under the Spanish Law of Leases which allowed defendant to hold over; however, that court decided the appeal on jurisdictional grounds and expressed no opinion as to the merits of the suit. Plaintiff declined to seek further review of the Court of First Instance's judgment or reinstate the suit in the Munici-

pal Court on proper jurisdictional grounds.

By letter dated January 29, 1970, defendant notified plaintiff that it would terminate its holdover tenancy and vacate the premises no later than May 25, 1970. Defendant did in fact vacate the premises by May 25, 1970.

Following defendant's termination notice, the parties negotiated in an effort to settle a variety of disputes and claims concerning termination procedures and amounts due plaintiff for rehabilitation of the housing units. These negotiations resulted in a series of settlement agreements which the parties formalized by the execution of modifications to the original contract. All of these modifications were executed after the September 26, 1968 expiration date of the original contract, and three were executed after defendant vacated the housing project on May 25, 1970.[2]

By Modification No. 5,[3] executed July 31, 1973, the parties agreed to a settle-

---

**2.** A summary of the subject matter and execution dates of the preceding four contract modifications is set forth in Modification No. 5, appearing in full, *infra*, n. 2.

**3.** SUPPLEMENTAL AGREEMENT FOR FULL SETTLEMENT OF CLAIMS

This Supplemental Agreement of Settlement for Reservations, Modification Number 5, to Contract No. AF61 (322)–1050, for settlement of termination claims under said contract, is entered into this 31st day of July 1973, between the Government of the United States of America (hereinafter referred to both as "the lessee" and "the Government"), represented by the Termination Contracting Officer executing this contract modification, and Urbanizadora Santa Clara, S. A. (hereinafter referred to both as "the lessor" and "the contractor"), represented by Senor Enrique Fernandez de Bobadilla as General Manager thereof, for the purpose of the lease (Contract AF61 (322)–1050 electing as domicile Calle Equiluz, Nos. 4 and 6, Jerez de la Frontera, Cadiz, Spain, a corporation organized and existing under the laws of Spain WITNESSETH THAT:
WHEREAS, the lessor and the Government have entered into Contract No. AF61 (322)–1050 under date of 25 June 1965 which, together with any and all amendments, changes, modifications, and supplements thereto, is

hereinafter referred to as "the contract"; and WHEREAS, by notice of termination dated 16 February 1970, the Government advised the lessor of the complete termination of the contract for the convenience of the Government, effective upon the close of business 25 May 1970; and

WHEREAS, Modification No. 1, dated 10 April 1970, was executed in connection with the termination of this contract to establish termination procedures; and

WHEREAS, Modification No. 2, dated 16 April 1970, settled certain claimed items regarding the housing project in general and settled all claims for rehabilitation of seven (7) housing units which had been substantially rehabilitated by Air Force contract. Payment of $16,-311.05 has been made in settlement thereof; and

WHEREAS, Modification No. 3, dated 29 January 1973, specifically identified two hundred seventy five (275) housing units that had been substantially rehabilitated by Air Force contract and then jointly conditioned surveyed, and as a result of negotiations provided an amount of Seventeen Thousand, Eight Hundred Forty-Nine dollars and Six cents ($17,-849.06) for additional rehabilitation work to be performed by the Lessor (Urbanizadora Santa Clara, S. A.); and

ment of "all remaining claims" under the contract, and plaintiff accepted a lump sum payment of $342,873.21. That Modification contained the express release that:

> In consideration of the payment of the sum of $342,873.21 as provided herein and in consideration of all other terms of this agreement, the contractor does hereby release, discharge and settle any and all claims and disputes of every kind whatsoever, known and unknown, under this contract which the contractor may have against the Government. The contractor will, in consideration of the terms of this agreement, dismiss with prejudice its appeal number 16812 before the Armed Services Board of Contract Appeals.

The agreed payment was made to plaintiff on September 10, 1973, and plaintiff dismissed with prejudice its appeal before the Armed Services Board of Contract Appeals.

On July 30, 1974, plaintiff filed suit in this court seeking just compensation from the United States under the Fifth Amendment,[4] of $222,640.00, the difference between the monthly rental payments under the expired contract ($51,870) and agreed but unapproved rate ($62,738) for the holdover period, September 26, 1968 through May 25, 1970.

Defendant contends that this claim is barred by plaintiff's execution of the release contained in Modification No. 5. Plaintiff maintains that the release in Modification No. 5 may have released claims "under the contract", but the instant claim is founded on the Fifth Amendment, and not under the contract, and that its claim arose after the contract between the parties had expired.

■ As we are of the opinion that the release contained in the parties' Modification No. 5 bars this claim, defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, and its petition is dismissed.

The principle "that a contractor who executes a general release cannot thereafter successfully maintain a suit, either for damages or for amounts allegedly

WHEREAS, Modification No. 4, dated 25 July 1973, settled specific set aside claimed items regarding the housing project and payment of $46,978.19 will be made in settlement thereof; Now therefore, by this Modification No. 5, the parties hereby agree to a settlement of all remaining claims and the lessor accepts an additional lump sum payment of Three Hundred Forty-two Thousand, Eight Hundred Seventy Three dollars and Twenty-one cents ($342,-873.21) for full settlement of all remaining claims now known or ever to be known under the contract.

In consideration of the payment of the sum of $342,873.21 as provided herein and in consideration of all other terms of this agreement, the contractor does hereby fully release, discharge and settle any and all claims and disputes of every kind whatsoever, known and unknown, under this contract which the con-

tractor may have against the Government. The contractor will, in consideration of the terms of this agreement, dismiss with prejudice its appeal number 16812 before the Armed Services Board of Contract Appeals.

It is further agreed that this settlement agreement shall not be effective and binding upon either party unless it is executed by both parties and approval thereof is given by the United States Air Forces Europe Contract Termination Settlement Review Board and the AFLC/JAB Trial Attorney on or before the 20th day of August 1973.

Written evidence of such approval shall be given, either to the Lessor at his business address or to the Lessor's attorney * * * on or before the 20th day of August 1973.

IN WITNESS WHEREOF, the parties herein have executed this agreement as of the date above written.

THE LESSEE
THE GOVERNMENT OF THE UNITED
STATES OF AMERICA

BY:
    DAVID L. WALKER, III, Major, USAF
    TERMINATION CONTRACTING OFFICER

THE LESSOR
URBANIZADORA
SANTA CLARA, S.A.

BY:
ENRIQUE FERNANDEZ
DE BOBADILLA
GENERAL MANAGER

---

**4.** U.S.Const. amend. V.

due under the contract, based upon events which occurred prior to the execution of the release"[5] has been established both by this court and the Supreme Court. *J. G. Watts Constr. Co.* v. *United States*, 161 Ct.Cl. 801 (1963); *H. L. C. & Associates Constr. Co.* v. *United States*, 367 F.2d 586, 176 Ct.Cl. 285 (1966); *Adler Constr. Co.* v. *United States*, 423 F.2d 1362, 191 Ct.Cl. 607 (1970), and *United States* v. *Wm. Cramp & Sons Co.*, 206 U.S. 118, 27 S.Ct. 676, 51 L.Ed. 983 (1907). Plaintiff takes no issue with this statement of law. Nor does it contend that the release is in any way invalid, ineffective or contains any manner of reservation of its claim. Rather, plaintiff points out that the release by its own terms is limited to claims "under the contract" and its claim is not "under the contract" but under the Fifth Amendment. Defendant claims that plaintiff's suit is barred by the release in Modification No. 5, because in signing that document, plaintiff released "any and all claims * * * of every kind whatsoever". Thus, the dispositive issue in this suit, as far as this court is concerned, is whether the release contained in Modification No. 5 encompasses plaintiff's claim.

The release provision in Modification No. 5 was executed nearly five years after the stated expiration date of the original contract, and more than three years past the defendant's termination of occupancy, as the last of a series of agreements intended to settle claims arising out of the United States' occupancy of plaintiff's housing project. The Modification recited *inter alia* the existence of a contract between plaintiff and defendant, the notification by the United States to plaintiff "of the complete termination of the contract * * * upon the close of business 25 May 1970" and the parties' agreement "to a settlement of all remaining claims".

Judging the conduct of the parties and the terms of Modification No. 5, with its release provision, on its face, it is clear that plaintiff's claim comes within the release provision, and is barred thereby.

Plaintiff's claim for additional rent during the holdover period, September 26, 1968 through May 25, 1970, framed as a petition for just compensation, arose prior to Modification No. 5 during a time in which the parties were attempting to settle their differences over defendant's occupancy of plaintiff's property. The claim came about only because of the parties' original rental contract. It was from this contract and under it that plaintiff's present claim germinated. The contract placed defendant in possession of plaintiff's property, the occupancy of which gave rise to the present claim, and from which plaintiff released without reservation all claims "of every kind whatsoever". As plaintiff's claim had its genesis by virtue of the contractual relationship between the parties, a relationship from which plaintiff released all claims, plaintiff is now barred from asserting a claim growing out of defendant's occupancy pursuant to the contract.

Plaintiff's argument that its claim does not arise "under the contract" as its rental contract with defendant expired by its own terms on September 26, 1968, and therefore no contract was in effect during the holdover period for which it claims ignores the fact that but for that rental contract and defendant's occupancy of plaintiff's project, thereunder, there would be no claim. *See, United States* v. *Wm. Cramp & Sons Co.*, 206 U.S. 118, 128, 27 S.Ct. 676, 51 L.Ed. 983 (1907).

Further, it is not apparent how plaintiff can argue that the release applies only to the contract period, January 1965 through September 26, 1968 when it continued to negotiate and execute modifications to alter the "expired" contract for a period of nearly five years subsequent to the 1968 expiration date. The

---

**5.** *H. L. C. & Associates Constr. Co.* v. *United States*, 367 F.2d 586, 590, 176 Ct.Cl. 285, 293 (1966).

last modification to which plaintiff agreed states:

> WHEREAS, by notice of termination * * * the Government advised the lessor of the complete termination of the contract * * * effective upon the close of business 25 May 1970.

It is apparent from the parties' actions and the language of the release that the parties intended to bring to a final close their dealings with respect to the rental of plaintiff's housing project. After the Government's termination notice the parties ceased negotiations as to an additional rental period, and concentrated on settlement of termination procedures and rehabilitation claims. Modifications No. 1 and 2 were executed toward this end. By May 25, 1970 defendant had completely vacated the rental property. Modifications No. 3 and 4, executed after the termination of defendant's tenancy, settled specific claims in respect to that termination. Modification No. 5, the last of the parties' agreements, was executed in "settlement of all remaining claims" and contained a general release of all claims. The whole tenor of the parties' agreements culminating in Modification No. 5 indicates their intention to completely end their relationship, and to settle forever obligations "of every kind whatsoever" arising from defendant's occupancy of plaintiff's property. Modification No. 5, titled Supplemental Agreement for Full Settlement of Claims, recites the parties' agreement "for full settlement of all remaining claims now known or ever to be known under the contract". The release language itself specifies that:

> * * * the contractor does hereby fully release, discharge and settle any and all claims and disputes of every kind whatsoever, known and unknown, under this contract which the contractor may have against the Government.

The broad and all inclusive language of the Modification and the release clearly evidences an intent on the part of the parties to effect a final closing of all matters arising out of their rental contract. "Stipulations of this kind are not to be shorn of their efficiency by any narrow, technical and close construction". *United States* v. *Wm. Cramp & Sons Co.*, 206 U.S. 118, 128, 27 S.Ct. 676, 678, 51 L.Ed. 983 (1907).

If plaintiff intended to preserve and pursue a claim for additional rent following the execution of the release, it was incumbent on plaintiff to manifest this intention in a clearly recognizable manner, *United States* v. *Wm. Cramp & Sons Co., supra.* Without such a reservation the broad general language of the "all claims" release and the objective intent of the parties must be given legal effect.

Releases serve to terminate with finality legal obligations of the parties. Without well-established grounds,[6] not present here, claims covered by the release and not reserved, no matter how meritorious, cannot be judicially entertained unless the release itself is found to be defective. *Adler Constr. Co.* v. *United States*, 423 F.2d 1362, 1364, 191 Ct.Cl. 607, 611 (1970).

Since we are of the view that the release contained in Modification No. 5, terminated all claims arising out of defendant's occupancy of plaintiff's property, plaintiff is not entitled to maintain a claim based on defendant's occupancy of its property. In light of that judgment, the court expresses no opinion as to the other arguments advanced by the parties.

Defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, and the petition is dismissed.

6. *See, J. G. Watts Construction Co.* v. *United States*, 161 Ct.Cl. 801, 806–807 (1963).