**Ronald G. FISHER and Mountain Air Helicopters, Inc.**

v.

**The UNITED STATES.**

**No. 346–76.**

United States Court of Claims.

Sept. 19, 1979.

---

John L. Langslet, Portland, Or., atty. of record, for plaintiffs. Martin, Bischoff, Templeton, Biggs & Ericsson, Portland, Or., of counsel.

Donnie Hoover, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and NICHOLS and SMITH, Judges.

## OPINION

PER CURIAM:

This case comes before the court on defendant's motion, filed June 14, 1979, requesting that the court adopt, as the basis for its judgment in this case, the recommended decision of Trial Judge Harry E. Wood, filed April 20, 1979, pursuant to Rule 134(h), plaintiff having filed no notice of intention to except or exceptions thereto and the time for so filing pursuant to the Rules of the court having expired. Upon consideration thereof, without oral argument, since the court agrees with the recommended decision, as hereinafter set forth[*], it hereby grants defendant's motion and affirms and adopts the decision as the basis for its judgment in this case. Therefore, it is concluded as a matter of law that plaintiffs are not entitled to recover and the petition is dismissed.

## OPINION OF TRIAL JUDGE

WOOD, *Trial Judge*: In this action, plaintiffs Ronald G. Fisher and Mountain Air Helicopters, Inc. (hereinafter "Mountain Air") sue to recover monetary damages alleged to be due under the terms of a contract (hereinafter described) between plaintiff Fisher and defendant as a result of an August 3, 1974 crash of a helicopter owned by Mountain Air[1] and leased to

---

[*] Although the court adopted the trial judge's separate findings of fact, which are set forth in his opinion, they are not printed herein since such facts as are necessary to the decision are contained in his opinion.

1. In its answer to plaintiffs' amended petition, defendant denied that Mountain Air was properly a party to this action. *Cf. S. W. Aircraft Inc. v. United States*, 551 F.2d 1208, 213 Ct.Cl. 206 (1977). Defendant has not briefed the mat-

plaintiff Fisher in connection with the latter's performance during the summer of 1974 of the said contract.[2]

## I

On June 13, 1973, defendant, acting through the contracting officer, Siuslaw National Forest, Department of Agriculture, awarded to plaintiff Fisher a contract (No. 03061–S) for "Helicopter Service". Under the terms of that contract, plaintiff Fisher was to furnish a "fully operational" helicopter, complete with support personnel and equipment, to be based at Alsea Ranger Station, Alsea, Oregon, for a "designated available" period commencing July 1, 1973. Both the helicopter and a pilot were to be available 24 hours per day during the contract's "stated use" period.

The contract guaranteed both a daily payment of $115 per day for 70 days, and 70 flight hours during the "designated available" period for which plaintiff Fisher was to be paid $180 per hour. It also contained an estimate of an additional 50 flight hours in excess of the guaranteed flight hours for which plaintiff Fisher was to be paid $100 per hour for each hour flown.

Paragraph 13 of the contract's General Provisions, entitled "Loss, Damage, or Destruction", provided as follows:

> The Government will assume risk for loss, damage, or destruction of equipment rented under this contract, provided that no reimbursement will be made for loss, damage, or destruction when (a) due to ordinary wear or tear, or (b) negligence of Contractor or his agents caused or contributed to loss, damage, or destruction.

The contract also contained a Disputes clause and a clause permitting its termination for convenience of the government by the contracting officer when "it is in the interest of the Government". It further provided that it might be renewed by mutual agreement on a year-to-year basis for not to exceed two renewals, at the same rates and under the same conditions specified in the contract. Pursuant to the latter provision, the contract was renewed for 1974.

At about 6:00 p. m., August 3, 1974, while the helicopter was being flown by an employee of plaintiff Fisher for the Siuslaw National Forest pursuant to the contract between defendant and plaintiff Fisher,[3] the helicopter struck the lowest of four unmarked electric power transmission lines crossing the Siuslaw River in the vicinity of Swisshome, Lane County, Oregon. The power line, made of seven strand, copper jacketed steel, and nearly an inch thick, hit the bubble of the helicopter at about neck level, and ripped it open. The helicopter suffered considerable other damage as well. The pilot was, however, able to land the helicopter on a flat rocky surface in the Siuslaw River about 300 feet or so downstream from the power line, and no personal injuries resulted from the crash. For reasons which will appear, the circumstances surrounding the crash, detailed in the findings, need not be repeated here.

Plaintiffs contend that defendant has the burden of proving that the negligence of plaintiff Fisher (or his employee, the pilot) caused or contributed to the damage here relevant. They further assert, however, that in any event plaintiffs have established by a preponderance of the evidence their "freedom from negligence", and that they are accordingly entitled to recover. In plaintiffs' view, a supplemental agreement of settlement, executed by plaintiff Fisher 5 days after the August 3, 1974 crash, and discussed hereinafter, does not affect that entitlement.

ter, and it is deemed abandoned. *Nossen v. United States*, 416 F.2d 1362, 1371, 189 Ct.Cl. 1, 18 (1969), *cert. denied*, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970).

**2.** Plaintiffs seek to recover the net cost of repairs to the helicopter ($18,395.79), plus "loss of profits through the unavailability of the heli-

copter for rental in the sum of $8300 and damages for loss of insurance premiums in the sum of $2400."

**3.** Two Forest Service employees were aboard the helicopter.

Defendant principally contends that any claims plaintiffs may have had were effectively released by the supplemental agreement, and are therefore barred. Defendant urges that while the burden of proof "on the issue of the pilot's negligence" is on plaintiffs, defendant has nonetheless amply demonstrated such negligence, and that plaintiffs are therefore not entitled to recover for this reason as well.[4]

For the reasons hereinafter set forth, it is concluded that plaintiffs are not entitled to recover, and that the amended petition should be dismissed.

## II

### A

Shortly after August 3, 1974, the contracting officer decided to terminate plaintiff Fisher's contract under the "Termination for Convenience of the Government" clause contained therein. After orally discussing the proposed termination with plaintiff Fisher, the contracting officer prepared and signed both a "Notice of Termination to Prime Contractor" and a "Supplemental Agreement of Settlement" (the "supplemental agreement"). On August 8, 1974, at the contracting officer's office, plaintiff Fisher acknowledged receipt of the notice of termination and signed the supplemental agreement.

The supplemental agreement[5] provided in pertinent part as follows:

*Article 1.* The contractor certifies that all his obligations and claims which are known or which might become known have been taken into account in arriving at this agreement.

*Article 2.* The contractor certifies that all claims of subcontractors or suppliers which are known or which might become known are either settled or will be settled by the contractor, and have been taken into account in arriving at this agreement.

*Article 3.* Upon execution of this agreement the Government agrees to pay to the contractor or his assignee the sum of $3,188.00.

Said sum of $3,188.00 constitutes payment in full and complete settlement of the amount due the Contractor by reason of the complete termination of work under the contract and of all other claims and liabilities of the Contractor and the Government under the contract.

When plaintiff Fisher executed the supplemental agreement, the contracting officer was aware that the helicopter had sustained considerable damage in the August 3, 1974 crash. Plaintiff Fisher then knew at least the approximate dollar amount of damages to the helicopter as a result of the August 3, 1974 crash, and he probably knew the exact dollar amount of such damages. The possibility of a claim for such damages, however, was neither discussed nor mentioned by the contracting officer or by plaintiff Fisher at that time.[6]

The contracting officer intended the supplemental agreement to operate as a release of defendant from all claims under its contract with plaintiff Fisher, and assumed that on its execution the agreement would operate to do so. Plaintiff Fisher did not indicate to the contracting officer in any way an intent subsequently to make a claim under the contract for damages to the helicopter; in fact, plaintiff Fisher himself then gave no thought to possible governmental liability for any such damages. No request that a claim for damages to the helicopter (or any other kind of claim) be excepted from, or reserved by, the terms of the supplemental agreement was made, and

---

4. Defendant also asserts that neither lost profits nor damages for loss of insurance premiums could be included in plaintiffs' recovery, even assuming entitlement to recover. Defendant does *not* urge a failure to exhaust administrative remedies.

5. The sum included in the supplemental agreement was due plaintiff Fisher, under the terms of the contract, for hours flown and days of availability, and was subsequently paid to him.

6. On February 2, 1976, Mountain Air submitted to defendant an administrative claim for damages to the helicopter allegedly due under the contract. To that date, no claim for such damages had been presented to defendant. The claim was denied April 9, 1976.

as executed by plaintiff Fisher that agreement contained no exceptions or reservations.[7]

## B

When, toward or at the conclusion of a contractual relationship, execution of a release [8] is appropriate, "a determination whether there are any unresolved differences between the contracting parties, and a delineation of any such differences, are legitimate and desirable ends." *Inland Empire Builders, Inc. v. United States*, 424 F.2d 1370, 1376, 191 Ct.Cl. 742, 752 (1970). Where, as here, "a government contractor has, but fails to exercise, the right to reserve claims from the operation of such a release [footnote omitted], it is neither improper nor unfair to invoke the principle that, absent some vitiating circumstance, the contractor 'cannot thereafter successfully maintain a suit * * * based upon events which occurred prior to the execution of the release.'" *Ibid.* See also *Rixon Electronics, Inc. v. United States*, 536 F.2d 1345, 210 Ct.Cl. 309 (1976); *Johnson, Drake & Piper, Inc. v. United States*, 531 F.2d 1037, 209 Ct.Cl. 313 (1976); *Adler Constr. Co. v. United States*, 423 F.2d 1362, 191 Ct.Cl. 607 (1970), *cert. denied*, 400 U.S. 993, 91 S.Ct. 461, 27 L.Ed.2d 441 (1971); *H. L. C. & Associates Constr. Co. v. United States*, 367 F.2d 586, 176 Ct.Cl. 285 (1966); *J. G. Watts Constr. Co. v. United States*, 161 Ct.Cl. 801 (1963).

By its terms, the release here under consideration encompassed "all claims" of plaintiff Fisher against defendant under the contract. It is, of course, true that there are "special and limited situations in which a claim may be prosecuted despite the execution of a general release." *J. G. Watts Constr. Co. v. United States, supra*, 161 Ct.Cl. at 806. See, *e. g., Colonial Navigation Co. v. United States*, 181 F.Supp. 237, 149 Ct.Cl. 242 (1960) (definite, fixed,

obligation held not released because release was clearly not intended); *Nippon Hodo Co., Ltd. v. United States*, 160 F.Supp. 501, 142 Ct.Cl. 1 (1958) (on motion for judgment on the pleadings, release held not to bar claim allegedly not intended by either party to be released); *Aircraft Associates & Mfg. Co. v. United States*, 357 F.2d 373, 174 Ct.Cl. 886 (1966) (release held invalidated by duress); *cf. Julius Goldman's Egg City v. United States*, 556 F.2d 1096, 1103, 214 Ct.Cl. 345, 357–58 (1977). This, however, is not such a situation.

Plaintiffs properly recognize that, absent some "vitiating circumstance", the execution of a general release will effectively preclude the prosecution of any claims not excepted therefrom. They assert that neither party to the release intended it to affect plaintiffs' right to make a subsequent claim for damages to the helicopter, that the parties intended, rather, only to settle plaintiff Fisher's claim for payment for hours flown and days of availability under the contract, and that the release accordingly should be given no effect here. These assertions have no merit.

Plaintiffs accurately note that at the time of the execution of the release the contracting officer and plaintiff Fisher did not specifically discuss the matter of damages to the helicopter or a possible claim therefor. It is also true that the payment stated in the release was the amount due plaintiff Fisher for hours flown and days of availability under the contract's payment provisions. It clearly does not follow therefrom, however, that "neither party contemplated or intended that the supplemental agreement of settlement would in any way affect any of the rights of either party concerning the damage to the helicopter."

The plain words of the release prepared by the contracting officer at the very least objectively manifest his own intent to make

---

7. That plaintiff Fisher could have reserved a claim for damages is crystal clear. See Federal Procurement Regulations, 41 C.F.R. §§ 1–8.-209–2, 1–8.806–1 (1973); see also *Johnson, Drake & Piper, Inc. v. United States*, 531 F.2d 1037, 209 Ct.Cl. 313 (1976).

8. In their respective arguments, the parties properly view the supplemental agreement of settlement as a release, and it will be so denominated hereinafter.

payment to plaintiff Fisher in full and complete settlement of the amount due by reason of the termination of work under the contract *"and of all other claims and liabilities of the Contractor and the Government under the contract."* (Emphasis supplied.) The evidence indicates that that objective manifestation of the contracting officer's intent coincided perfectly with what he in fact meant to accomplish through the execution of the release by plaintiff Fisher.

There is, moreover, no proof whatever that on August 8, 1974, Mr. Fisher contemplated or intended that the release would not affect his rights under the contract with respect to damages to the helicopter. The most that can be said is that he gave no thought to the matter one way or the other. To paraphrase *J. G. Watts Constr. Co. v. United States, supra,* 161 Ct.Cl. at 807, all we have is a "simple case": plaintiff Fisher's contract was completed (by termination for convenience) and upon the execution of a release of all claims under the contract he received from defendant final payment; some 18 months later, however, plaintiffs attempted to assert administratively a contract claim for damages to the helicopter and, when that effort was unsuccessful, filed suit on the claim. The decisions of this court teach that in these circumstances "this is not permissible * * *." *Ibid.*

The conclusions stated hereinabove are reinforced by the decision in *Rixon Electronics, Inc. v. United States, supra.* There, an executed release, if enforced according to its terms, concededly barred the claim in suit. Among other things, however, the plaintiff in *Rixon* asserted that the release, purportedly signed by "mutual mistake" and not reflecting the true agreement of the parties, should be reformed. That assertion was in turn grounded on the argument that at the time of execution of the release both parties were thinking only of "time-delay claims." Thus, it was contended, the release should accordingly be re-

formed to limit it to such claims alone. That contention is quite close to the one made by plaintiffs here.

Here, as in *Rixon*, the evidence is that defendant "intended the sweeping language of the release to mean what it said." *Id.,* 536 F.2d at 1353, 210 Ct.Cl. at 324. The court went on to say that while "both sides related the release to release of time-delay claims, which was the only kind of claim they had discussed", it was nonetheless "fallacy * * * to suppose, if they thought the release included time-delay claims, they had to have thought it didn't release anything else." *Ibid.* Plaintiffs' argument in this case rests on a substantially identical fallacy: that because the release in suit included a claim to payment for hours flown and days of availability, it did not release anything else.

No sound basis for limiting the scope of the release executed August 8, 1974, by plaintiff Fisher, so as to exclude therefrom a claim for damages to the helicopter as a result of the August 3, 1974 crash has been offered by plaintiffs, or found. Under the facts of this case, rather, "it appears only that at most plaintiff [Fisher] did not at the time [he] executed the release know or recognize that what had occurred gave [him] * * *" a possible claim under the contract for damages to the helicopter. *J. G. Watts Constr. Co. v. United States, supra,* 161 Ct.Cl. at 809–10. Nothing which would justify relieving plaintiffs from the consequences of a release of all claims under the contract has been shown, or is apparent. *Ibid.*

In light of the foregoing, it is concluded that plaintiffs' claim for damages flowing from the August 3, 1974 crash is barred by the terms of the release. Accordingly, the amended petition should be dismissed.[9]

## CONCLUSION OF LAW

Upon the findings and foregoing opinion, which are adopted by the court, the court

---

**9.** This conclusion makes it unnecessary to treat in this opinion the questions, whether, under paragraph 13, the burden of proving that the "negligence of Contractor or his agents caused or contributed to loss, damage, or destruction"

of rented equipment properly rests with defendant, and, if so, whether defendant has met that burden in this case. Detailed findings respecting the crash are, however, included in the findings of fact.

concludes as a matter of law that plaintiffs are not entitled to recover and the petition is dismissed.