George DeBARROS, a/k/a Jorge DeBarros, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 604–81C.

United States Claims Court.

June 27, 1984.

Gregory E. Paskell, Kalispell, Mont., for plaintiff.

Lenore C. Garon, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

## OPINION

TIDWELL, Judge:

This matter comes before the court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint, and Plaintiff's Opposition thereto. Oral argument was heard on September 23, 1983. For the reasons stated below, Defendant's Motion to Dismiss is allowed and Plaintiff's Amended Complaint is to be dismissed with prejudice.

## BACKGROUND

This case was originally filed in the United States District Court for the District of Montana, Missoula Division. By mutual agreement of the parties, it was transferred to our predecessor court in June of 1981.[1]

Plaintiff's initial complaint, filed March 8, 1982, sought $48,000 in damages from the government arising out of two Forest Service thinning contracts; *e.g.*, No. 10–2130 and No. 10–2104, entered into by plaintiff and defendant on September 27, 1976. On June 7, 1982 defendant filed a Motion to Dismiss Plaintiff's Complaint on the grounds that it failed to comply with former Rule 162(a) of the Rules of the United States Court of Claims, in that it failed to set forth the relationship with the Wunderlich Act and it failed to state the impact of a prior administrative decision.

On December 29, 1982 plaintiff filed a brief in opposition to defendant's motion to dismiss and on January 17, 1983 plaintiff filed an Amended Complaint. Plaintiff's Amended Complaint cured the alleged deficiencies pointed out by defendant in its motion to dismiss. However, defendant, on February 1, 1983, filed a motion to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted and for lack of jurisdiction.

Plaintiff's Amended Complaint sets forth two basic theories for recovery. Plaintiff alleges that he entered into the subject contracts with the Forest Service based on representations made by defendant's agents concerning the number of "stems per acre" required to be thinned.[2] Plaintiff alleges that he performed until defendant terminated the contract for the government's convenience based on a determination that there were substantially more stems per acre than the contract specified.[3] As a result thereof, plaintiff alleges he was damaged in the amount of $23,000.

Thereafter, plaintiff entered into negotiations with the contracting officer to determine the amount of compensation due him under the contract as the result of defend-

---

1. The United States Court of Claims which became the United States Claims Court on October 1, 1982.

2. "Stems per acre" refers to the individual trees per acre that must be removed in a thinning

contract to provide adequate growth conditions for the remaining trees.

3. Defendant concedes that it made a substantial error in estimating the number of stems per acre.

ant's termination for convenience.[4] Plaintiff alleges that, during the negotiations he brought to the contracting officer's attention various claims for "incidental and consequential damages" allegedly resulting from defendant's termination of the contract. Thereafter, plaintiff asserts that, based on the contracting officer's representation that negotiations would continue on those claims, he entered into a settlement agreement with defendant and executed a full release of all claims at less than their actual value. The contracting officer afterwards refused to negotiate further on the claims and plaintiff asserts that he has been damaged, as a result thereof, in the amount of $15,000.[5]

## PROCEDURAL HISTORY

On August 16, 1978 plaintiff brought its claims before the contracting officer for a decision. The contracting officer denied plaintiff's claims and issued an opinion to that effect dated December 15, 1978, which was twice amended, on January 3, 1979 and February 9, 1979. Thereafter, plaintiff appealed to the Department of Agriculture Board of Contract Appeals (AGBCA). In an opinion rendered by the Board of Contract Appeals, dated January 3, 1980, the AGBCA dismissed the appeal on the grounds that "no basis for relief under the contract had been shown and that any claim for breach of contract or tort was outside the Board's jurisdiction."

Defendant seeks to dismiss plaintiff's Amended Complaint on the grounds that the court lacks jurisdiction to hear the claims and that the court is not empowered to grant the relief requested.

## DISCUSSION

As a threshold issue, we are faced with the question of whether this court has jurisdiction to entertain plaintiff's action. The Tucker Act, 28 U.S.C. 1491 grants jurisdiction to this court to "render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States ..." Plaintiff, in its amended complaint, alleged as one of it's claims breach of contract which would arguably bring plaintiff's Complaint within the jurisdiction of this court.[6] 28 U.S.C. 1491. Plaintiff's other claims seeking consequential damage were previously brought before the Agriculture Board of Contract Appeals and dismissed for lack of

---

**4.** Clause 6 of the General Provisions of the contract provided that upon a termination for convenience, "the contractor shall be compensated in accordance with the procedures in section 1–8.701 of the Federal Procurement Regulations (41 CFR 1–8) in effect on this contract's date."

Section 1–8.701 of the Federal Procurement Regulations provides in pertinent part that: "The contracting officer will determine the amount due ... to include only the costs incurred by the contractor in performing the work terminated, 'including initial costs and preparatory expense allocable thereto' and profit ... as well as reasonable costs of settlement...."

It further provides that: "The total sum to be paid to the contractor ... shall not exceed the total contract price as reduced by the amount of payments otherwise made and as further reduced by the contract price of work not terminated."

**5.** Plaintiff sought damages of $15,910 before the Department of Agriculture Board of Contract Appeals (AGBCA). In a letter to the contracting officer plaintiff stated that his damages consisted of: $11,910 for lost property (mobile home),

because plaintiff was unable to make payments thereon, and $4,000 for personal inconvenience including anticipated profits, additional living costs and hardships caused by loosing the home, disruption of credit, internal family hardships with in-laws and a near breakup of his marriage. It should be noted that the court is unsure of how plaintiff arrived at its damages figure of $48,000 set out in the complaint. In its Complaint and its Amended Complaint plaintiff alleges it was damaged to the extent of $23,000 as a direct result of the termination for convenience. Plaintiff further alleges that it was damaged to the extent of $15,000 as an indirect result of the termination. This amounts to $38,000.

**6.** The Contract Disputes Act of 1978, 41 U.S.C. 601–612, is not applicable to this case since plaintiff's cause of action arose prior to and was not pending before the contracting officer on March 1, 1979, the effective date of the act. Prior to the Contract Disputes Act a plaintiff could come directly to this court only upon a claim of a breach of contract. *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966).

jurisdiction. Plaintiff renewed its attempt to seek relief in this court by filing a complaint in the United States District Court for the District of Montana prior to the expiration of the applicable statute of limitation which complaint was later transferred to this court by mutual agreement of the parties.[7]

Plaintiff's claims are based on contract No. 10–2130 which the government terminated for convenience because of an improper estimation of the scope of work under the contract. The contracting officer compensated plaintiff for all work performed under the contract and for any profit to which he was entitled. Plaintiff thereafter signed a release of claims against the United States for damages stemming from the subject contract.

Plaintiff now brings suit seeking damages on two alternative theories. First, plaintiff characterizes the faulty stem count as a material misrepresentation which amounts to a failure of consideration on the original contract and alleges that this constitutes a breach of contract on the part of defendant and prays for damages. Secondly, plaintiff attacks the release by characterizing it as a "partial release" and alleges that the contracting officer made material misrepresentations in that he promised further negotiations in exchange for plaintiff signing the release and, thereafter, refused to negotiate.

 We find Plaintiffs arguments unpersuasive and hold that Plaintiff's claims' are barred on jurisdictional grounds. Under both of its theories for recovery plaintiff alleges misrepresentation on the part of the government as the basis for its claims. It is well settled that claims for

damages resulting from misrepresentation sound in tort. *See e.g. McCreery v. United States,* 161 Ct.Cl. 484, 487 (1963). The Tucker Act, 28 U.S.C. 1491, explicitly excludes from the jurisdiction of the Claims Court any claim sounding in tort. *See e.g. South Louisiana Grain Services, Inc. v. United States,* 1 Cl.Ct. 281, 288 (1982); *McCreey v. United States,* 161 Ct.Cl. at 488. Moreover, no court has jurisdiction to hear a claim for misrepresentation against the United States since the Federal Tort Claims Act, 28 U.S.C. 2680, explicitly excludes it from coverage under the act. *United States v. Neustadt,* 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961).

 Even assuming, however, that this court has jurisdiction to hear plaintiff's claims, plaintiff is barred by accord and satisfaction from attacking the release and seeking further damages on its claims arising from the subject contract. *Ronald G. Fisher and Mountain Air Helicopters, Inc. v. United States,* 221 Ct.Cl. 316, 608 F.2d 435 (1979). *See H.L.C. & Associates Construction Company, Inc. v. United States,* 176 Ct.Cl. 285, 367 F.2d 586 (1966). The termination of the contract was followed by negotiations between plaintiff and the contracting officer which culminated in a final settlement and the execution of a full release.[8] It is well settled that a contractor who executes a general release is thereafter barred from maintaining a suit for damages or for additional compensation under the contract based on events that occurred prior to the execution of the release. *B.D. Click Co. v. United States,* 222 Ct.Cl. 290, 305, 614 F.2d 748, 756 (1980); *Urbanizadora Santa Clara, S.A. v. United States,* 207 Ct.Cl. 297, 518 F.2d

---

**7.** Plaintiff's claim was filed in the District Court on January 23, 1981 and later transferred to this court. The relevant date for determining this court's jurisdiction under 28 U.S.C. 2501 is the date the claim was filed in the District Court. 28 U.S.C. 1406(c). *See* RUSCC 84.

**8.** Plaintiff was compensated $432.99 in termination and settlement costs and $3,102.01 for the extra stems on that portion of the contract which plaintiff completed prior to the termination. The release provided:

"The contractor hereby unconditionally waives any claim against the government arising under the terminated portion of the contract or by reason of its termination including, without limitation, all obligation of the government to make further payments or to carry out other undertakings in conjunction with said terminated portion, and the government acknowledges that the contractor has no obligation to perform further work or services under the terminated portion of the contract."

574 (1975). The Court agrees with the findings of the AGBCA, which are a part of the record herein, that plaintiff "unconditionally waived any claim against the government arising under the terminated portion of the contract by reason of its termination including, without limitation, all obligation of the government to make further payments or to carry out other undertakings in conjunction with said terminated portion." Plaintiff also signed the final contract payment estimate and invoice in which plaintiff certified that his bill contained therein was "correct and just." Moreover, plaintiff admits in paragraph 6 of its amended complaint that it executed the release on the theory that "said release covered ... the breach issues ..." Thus, it is evident that plaintiff received full compensation for the termination of the contract and for extra work done due to the faulty estimate of the number of stems, and can recover no more. Plaintiff is therefore barred by accord and satisfaction from attacking the release.

 As for plaintiff's additional claims pending before the court, for damages flowing from the loss of plaintiff's mobile home, loss of income, and personal inconveniences in the form of hardships and additional expenses, such, in the opinion of the court, were not reasonably foreseeable by the parties at the time the contract was executed and, therefore, constitute consequential damages. *Gardner Display Co. v. United States*, 171 Ct.Cl. 497, 504–05, 346 F.2d 585 (1965). It is well settled that consequential damages are not recoverable against the United States for breach of contract. *Northern Helex Co. v. United States*, 207 Ct.Cl. 862, 886–88, 524 F.2d 707, 720–21 (1975), *cert. denied*, 429 U.S. 866, 97 S.Ct. 176, 50 L.Ed.2d 146 (1976). Plaintiff's damages herein are clearly consequential damages therefore, this court is unable to grant the relief requested.

 To the extent that plaintiff attempts to show that the release was not a complete accord and satisfaction by alleging that the negotiations resulted in the formation of a "new contract", the bargain being the payment of the consequential damages in exchange for plaintiff executing the release, the court is not persuaded. Plaintiff's argument is barred on two grounds. First, the parol evidence rule, which precludes the admission into evidence of any prior or contemporaneous agreements which modify or contradict a final written agreement, prevents plaintiff from introducing evidence to show the existence of such agreement. *See David Nassif Associates v. United States*, 214 Ct.Cl. 407, 557 F.2d 249 (1977). However, even if plaintiff were able to circumvent the parol evidence rule and introduce evidence showing the existence of such agreement, defendant would not be bound thereby because the contracting officer was not authorized to agree to compensate plaintiff for consequential damages. It is well settled that the United States is not bound by the unauthorized acts of its agents. *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Lehner v. United States*, 1 Cl.Ct. 408, 415 (1983); *Housing Corporation of America v. United States*, 199 Ct.Cl. 705, 711, 468 F.2d 922, 925 (1972). Since consequential damages may not be awarded for breach of a government contract, *a fortiori*, the contracting officer cannot obligate the United States to compensate plaintiff for those types of damages.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Plaintiff's Amended Complaint is granted and Plaintiff's Amended Complaint is to be dismissed.

IT IS SO ORDERED.