**RACHELLE ENTERPRISES, INC.,**
v.
**UNITED STATES.**
No. 472–57.

United States Court of Claims.
Jan. 14, 1959.

Alex Akerman, Jr., Washington, D. C., for plaintiff. Carl L. Shipley, Washington, D. C., Roscoe Pickett, Atlanta, Ga., and Shipley, Akerman & Pickett, Washington, D. C., were on the brief.

Clare E. Walker, New York City, with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

WHITAKER, Judge.

The original petition in this case was filed on October 10, 1957, by Myron Warshaw, Incorporated. On August 15, 1958 Rachelle Enterprises, Incorporated, filed a motion to be substituted as party plaintiff in the case, because on January 13, 1955, it had purchased the claim asserted in the original petition, pursuant to an order of the United States District Court for the Southern District of Florida, authorizing the trustees in bankruptcy to sell the claim. Its motion to be substituted was granted, conditioned upon the filing of a certified copy of the order. A certified copy was subsequently filed. It reads, in part, that, upon petition of the trustees in bankruptcy, they are "authorized to sell at private sale, without notice, the claim of the bankrupt against the government of the United States for the sum of $250.00 and they are direct-

ed to convey title on receipt of the purchase price." There is also attached the bill of sale of the trustees, dated January 13, 1955.

Defendant does not question the capacity of Rachelle Enterprises to maintain this suit.

Myron Warshaw, Inc., had entered into two contracts with the Quartermaster Department of the United States Army for furnishing women's exercise skirts and shirtwaists. There seems to have been some delay on the part of the defendant in furnishing blueprints for the manufacture of the skirts and shirtwaists contracted for, and the material furnished by the Government is alleged to have been defective. Plaintiff complained about these matters, and negotiations were had, which resulted in the execution of two supplemental contracts, increasing the amount to be paid by the defendant, in consideration of which it was agreed as follows: "contractor hereby waives, relinquishes and releases any and all claims against the Government arising from subject contract or from this action." (See plaintiff's petition, paragraph 3.)

This would seem to bar the claim; but plaintiff's petition alleges that this release was executed without authority and that it is entitled to recover the excess costs incurred, by reason of the Government's defaults, in the sum of $118,766.-71, notwithstanding the release. This position cannot be maintained.

The release was executed by the president of the corporation. It was impressed with the corporate seal of the corporation, and contained the certification of one Harris J. Glantz, who certified that he was secretary of the plaintiff corporation, and that "Myron Warshaw, who signed supplemental agreement on behalf of the contractor, was then President of said corporation; that said supplemental agreement was duly signed for and on behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers."

Plaintiff says that this certificate is false, but it files no affidavit or other paper to contradict it. Its unsupported allegation that the certificate is false is not sufficient to raise a genuine issue of fact.

But, whether or not Myron Warshaw had actual authority to sign the release, it is quite clear that the corporation held him out as having such authority and is, therefore, bound by his acts. The original contract between the parties had been executed for the corporation by Myron Warshaw as president. The letters to defendant, making claim on account of defendant's alleged defaults, were signed by him. He signed the assignments of the contracts to the First National Bank of Miami; and he signed the notice to the defendant of the assignment. These things, together with the certificate of Harry J. Glantz, justified defendant in relying upon his apparent authority.

In addition, Mr. Warshaw signed the invoices for the amounts due in accordance with the supplemental agreements containing the release. The corporation accepted payment of the invoices, and has retained these amounts ever since. The invoices were submitted on May 1, 1953; they were paid shortly thereafter, and the corporation has never returned or offered to return the money paid in consideration of the release. By its retention of the consideration for the release, it has ratified its execution, whether or not the president had actual authority to execute it.

It is true Myron Warshaw, Inc., filed a claim with the General Accounting Office in June 1953, but when the claim was disallowed in July of 1954, it apparently abandoned the claim, since nothing more was done until the petition in this court was filed, more than three years later, on October 10, 1957. This was after the claim had been purchased by Rachelle Enterprises, Inc., from the trustees in bankruptcy of Myron Warshaw, Inc., for $250.

We are of opinion that Myron Warshaw, Inc., not only held out its president as having authority to act for it in mat-

ters concerning the contracts, but that it also ratified his action in agreeing upon the additional amount to be paid to cover increased costs incurred by reason of the defendant's defaults, and the giving of a release in consideration therefor, and that, therefore, since it retains the consideration for the release, it is foreclosed from denying its validity and binding effect.

Defendant's motion for summary judgment must be granted, and plaintiff's petition must be dismissed.

It is so ordered.

EDGERTON, Circuit Judge, sitting by designation, JONES, Chief Judge, LARAMORE and MADDEN, Judges concur.