Pee Curiam:
This case was referred pursuant to Buie 37(e) to Saul Bichard Gamer, a trial commissioner of this court, with directions to make his recommendation for conclusion of law on defendant’s motion for summary judgment. The commissioner has done so in an opinion filed January 3, 1963. Plaintiff sought review of the commissioner’s opinion and recommendation for conclusion of law and upon plaintiff’s waiver of oral argument the case was submitted to the court without argument. Since the court is in agreement with the opinion and recommendation of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. It appearing, for the reasons stated in the opinion, that the release executed by the plaintiff serves to bar the prosecution of the cause of action upon which the petition is based, the court concludes as a matter of law that the petition fails to state a claim upon which relief can be granted. Defendant’s motion for summary judgment is granted and plaintiff’s petition is dismissed.
OPINION OP COMMISSIONER
In June 1955, plaintiff entered into a contract with defendant for the construction of an Airmen’s Mess and Fire Station at the Klamath Falls Air Force Base in Klamath Falls, Oregon.
*804 The petition herein, filed on August 30,1961, claims that in September 1955, defendant interfered with and delayed plaintiff’s performance of the contract. The contention is that defendant’s representatives, as a result of their inspection of plaintiff’s concrete work, issued unjustified stop orders in that they erroneously contended that the concrete plaintiff was using did not comply with the contract specifications. However, defendant, by its answer, pleaded affirmative defenses which alleged that, upon completion of the contract in November 1956, plaintiff had, pursuant to the contract provisions, duly executed a general release containing no reservations or exceptions, and had thereafter, in consideration thereof, received full compensation for its work under the contract. Defendant contended this constituted an accord and satisfaction serving to bar any claim which plaintiff might have.
Thereupon the parties, desiring that the court first resolve the issues arising out of the affirmative defenses, entered into a stipulation “for the purpose of presenting to the Court the facts and issues” concerning such defenses. The stipulation recites the entry into the contract by plaintiff; the contract provisions with respect to the execution of a release and the making of the final payment; the completion of the contract by plaintiff, and the acceptance by defendant of plaintiff’s performance as satisfactory, on November 30,1956; the execution by plaintiff on the same day of a general release (attached as an exhibit); and the subsequent presentation by plaintiff and payment by defendant of the final amount due (the final voucher executed by plaintiff, dated December 20, 1956, in the amount of $27,168.46, and defendant’s final check, dated December 21,1956, in the same amount, also being attached as exhibits). The stipulation closes with the statement “that no additional evidence is necessary on the issues of release and accord and satisfaction, and that the Court may resolve them on the basis of the facts stipulated herein.”
The pertinent contract provision (par. 7(d)) pertaining to the execution of the release, as recited both in the pleadings and the stipulation, is as follows:
Upon completion and acceptance of all work required hereunder, the amount due the Contractor under this *805 contract will be paid upon tbe presentation of a properly executed and duly certified voucher therefor, after the Contractor shall have furnished the Government with a release, if required, of all claims against the Government arising under and by virtue of this contract, other than such claims, if any, as may be specifically excepted by the Contractor from the operation of the release in stated amounts to be set forth therein. * * *
The release executed pursuant thereto recites that:
in consideration of the sum of $27,168.46 * * * the Contractor does, and by the receipt of said sum shall, * * * remise, release and forever discharge the Government * * * of and from all liabilities, obligations and claims whatsoever in law and in equity under or arising out of said contract.
No exceptions or reservations are set out.
Thereafter defendant filed a motion for summary judgment, relying upon the release, and it is upon this motion that the case now comes before the court.
On the basis of the simple facts as admitted by the pleadings and as stipulated, it is not apparent how plaintiff can avoid the effect of the general release it executed. Under identical contract provisions and releases executed pursuant thereto, contractors have, in similar situations, consistently been precluded from subsequently asserting claims arising out of their contract performance which were not excepted from the provisions of the release. A. L. Coupe Construction Co., Inc. v. United States, 134 Ct. Cl. 392, 398-399 (1956); Jacobson Brothers Company v. United States, 98 Ct. Cl. 1, 26-27 (1942); H. B. Nelson Construction Co. v. United States, 91 Ct. Cl. 476, 486-487 (1940).
The contention that the claim herein involved, being one for damages for breach of contract arising out of unjustified delays caused the contractor, is not one, in the language of the release, “under or arising out of said contract”, and therefore not covered by the release, cannot be sustained. Both the Supreme Court and this court have long held that such claims, where not excepted from the provisions of a release, are as effectively barred as claims for additional work performed under the contract. United States v. Wm. Cramp & Sons Co., 206 U.S. 118 (1907); Torres v. United *806 States, 126 Ct. Cl. 76, 78 (1953). As the Court held in the Cramp case in construing a release of “all claims of any kind or description under or by virtue of” the contract:
Manifestly included within this was every claim arising not merely from a change in the specifications, but also growing out of delay caused by the Government. * * * It may be that, strictly speaking, they were not claims under the contract, but they were clearly claims by virtue of the contract. Without it no such claims could have arisen, (p. 127.)
Nor can any contention be based upon lack of consideration for the release and that it was, as plaintiff asserts, given only “in exchange for amounts otherwise already due plaintiff” (pltf.’s brief, p. 3). “* * * the Contract is itself full consideration” where it contains specific provisions with respect to such a release, and therefore “no payment of extra moneys is necessary to sustain this release.” United States v. Wm. Cramp & Sons Co., supra, at p. 128.
There are, of course, special and limited situations in which a claim may be prosecuted despite the execution of a general release. For instance, where it is shown that, by reason of a mutual mistake, neither party intended that the release cover a certain claim, the court will reform the release. Nippon Hodo Company, Ltd. v. United States, 142 Ct. Cl. 1 (1958); E. W. Bliss Co. v. United States, 70 Ct. Cl. 176 (1930); L. W. Packard c& Co. v. United States, 66 Ct. Cl. 184, 192-193 (1928). Thus where, on a cost reimbursement type of contract entered into with the United States, a State, after the completion of the contract and the execution of a general release by the contractor, suddenly and for the first time decides to impose certain taxes upon the contractor arising out of his contract operations, which taxes would have been a reimbursable cost under the contract terms had they been assessed prior to the completion of the contract, this court has permitted the contractor to be reimbursed despite its execution of the release. This again was considered an appropriate mutual mistake and reformation situation since neither party could have been aware when the release was executed that such a cost had been incurred. Duhame v. United States, 133 Ct. Cl. 360 (1955); Harrison Engineering and Construction Corp. v. United States, 107 *807 Ct. Cl. 205 (1946). Similarly, where the conduct of the parties in continuing to consider a claim after the execution of the release makes plain that they never construed the release as constituting an abandonment of the claim, Winn-Senter Construction Co. v. United States, 110 Ct. Cl. 34, 65-66 (1948), or where it is obvious that the inclusion of a claim in a release was attributable to a mistake or oversight, Colonial Navigation Co. v. United States, 149 Ct. Cl..242 (1960), or where fraud or duress is involved, Winn-Senter Construction Co. v. United States, supra, at p. 66; Michael Rose Productions v. Loew's Inc., 143 F. Supp. 606, 607 (D.C.S.D.N.Y., 1956), the release will not be held to bar the prosecution of the claim.
However, there is nothing in the pleaded or stipulated facts which serve in any way to place this case in any of these categories. All we have is the simple case of a contractor who completed his contract, and, as provided by the contract, received his final payment upon the execution of a full release, and then almost 5 years later attempts to assert claims. Absent exceptional circumstances of the kind described, this is not permissible, as this court has consistently held. Hellander v. United States, 147 Ct. Cl. 550, 561 (1959); Rochelle Enterprises, Inc. v. United States, 144 Ct. Cl. 701 (1959); Shepherd v. United States, 125 Ct. Cl. 724, 742 (1953); Bein v. United States, 101 Ct. Cl. 144, 159-160 (1943); Eastern Contracting Company v. United States, 97 Ct. Cl. 341, 355 (1942). Accordingly, there would, seem to be no alternative but to grant defendant’s motion for summary judgment.
In its brief, plaintiff does recite some additional facts which it claims serves to permit it to prosecute its claim despite the release it executed. Plaintiff says that in Donald M. Drake Co. v. United States, 153 Ct. Cl. 433 (1961), this court held that the Drake Company, another contractor on the same project on which plaintiff was engaged, was entitled to recover damages as a result of the identical unjustified concrete stop orders about which plaintiff here complains. Plaintiff states that it was not “aware of defendant’s improper act when the release was made”, that defendant was “the perpetrator and concealer of the unknown facts”, *808 that plaintiff never “intended to release a claim fully known to and created by defendant but concealed from plaintiff”, and that plaintiff should in equity be precluded from advancing only claims based on “delays whose nature was fully appreciated at the time” it executed the release, and not those “where only defendant then knew of the circumstance of its stop order” (pltf.’s brief, pp. 2-3).
These allegations are all outside the record properly before the court. Statements made by counsel in briefs are not normally accepted by the court as being a part of the factual record. Star Woolen Company v. United States, 159 Ct. Cl. 62 (1962). Especially would this appear to be appropriate where, as here, the parties have specifically agreed in their stipulation “that no additional evidence is necessary on the issues of release and accord and satisfaction, and that the Court may resolve them on the basis of the facts stipulated herein” (Stip., par. 6).
However, even considering, in weighing a dispositive motion made by defendant, alleged facts as set forth in plaintiff’s opposition brief, as this court has sometimes done (Moen v. United States, 128 Ct. Cl. 579 (1954); Sheaf Steam Shipping Co. v. United States, 142 Ct. Cl. 379, 382 (1958)), it nevertheless is plain that such facts would not serve to permit plaintiff to escape from the terms of the release.
If we assume, as plaintiff contends, that all the facts as found by the court in the Drake case are equally applicable to plaintiff,[1]an examination of the Drake record fails to substantiate plaintiff’s contention that it was not cognizant of all the pertinent facts relating to the delay it encountered prior to the completion of its contract and the execution of the release. It is there shown that defendant, from September 7,1955, to October 10, 1955, forbade the use of any concrete furnished by Drake’s supplier because defendant suspected that the concrete failed to meet contract specifications. Drake promptly warned that defendant’s order was seriously delaying its operations. However, defendant persisted in the stop order until October 10, 1955, by which time labora *809 tory tests bad been completed and showed that the concrete being supplied by Drake’s supplier, the Miller Company, did in fact meet tbe specifications. Thereupon, “upon the clearing of Miller Company’s concrete the plaintiff and all of the other contractors on the base who had been similarly affected by the temporary halt presented their accumulated demands to Miller Company with the result that concrete had to be rationed for several weeks” (p. 439), resulting in still further delay.
The court allowed damages to the Drake Company, finding that defendant should not have closed down the supplier’s plant indefinitely, as it did, and thereby in turn delaying Drake for a relatively long period, but that, considering the known nature of the difficulty (contaminated mixing bins, causing deleterious material in the aggregate), the same result could have been accomplished in a much shorter period of time by adopting a reasonable alternative method. The court also found that defendant delayed unduly in having the concrete tested by the laboratory.
From these essential facts, it is not understood what there was that defendant, as plaintiff now charges, concealed or could have concealed, nor does plaintiff enlighten us in any way in this respect. Defendant’s stop order was lifted, and the subcontractor’s concrete was cleared for plaintiff’s use, on October 10, 1955. Plaintiff completed the project and executed the release over a year later, on November 30,1956. By that time surely all of the facts pertaining to, as well as all the effects of, the delay were known or at least available to it. The problem involved was the essentially simple one of whether the concrete plaintiff was supplying complied with the specifications and whether defendant was justified in stopping plaintiff’s contract operations for as long as it did in order to answer that question. At the time plaintiff executed the release, it was in a position to know fully all the facts with respect thereto, since they had occurred over a year earlier. Certainly plaintiff was in no different position than was the Drake Company, which successfully prosecuted its claim in this court.
Under the circumstances, it appears only that at most plaintiff did not at the time it executed the release know or *810 recognize that what had occurred gave it a valid claim in law for breach of contract, and that the first time it realized this was some 5 years later when it was appraised of this court’s decision in the Brake case.[2] However, unilateral ignorance of one’s legal rights where “all the facts bearing on the existence of the injury were known” does not suffice to relieve one of the consequences of having released the claim. Shepherd v. United States, supra, at p. 742. Much as one dislikes depriving any petitioner of the opportunity to prove the existence of a valid claim, to hold otherwise in a case such as this would go far toward destroying that certainty in business affairs which releases were designed to provide.
Accordingly, even assuming for the purposes of this motion, as plaintiff contends in its brief, that plaintiff was one of the other contractors on the same project that was involved in the Drake case, and that all the facts in the Brake case are equally applicable to plaintiff, the result would be the same. For there is nevertheless one important distinction — plaintiff executed a full release, whereas the Drake Company did not.

 In the Brahe case the court noted (p. 434) that IX prime contractors were working on the Klamath Falls Air Force Base project. However, plaintiff is not mentioned in the court’s findings as being one of these contractors.

 The Brake decision was handed down on May 3, 1961. Plaintiff’s petition was filed on August 30, 1961.