ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| ███████████████████████ | )     ASBCA No. 61065 |
| | ) |
| Under Contract No. W91JA4-12-C-7131 | ) |

APPEARANCE FOR THE APPELLANT:     ███████████████
    Managing Director

APPEARANCES FOR THE GOVERNMENT:     Raymond M. Saunders, Esq.
    Army Chief Trial Attorney
    CPT Harry M. Parent III, JA
    Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE OSTERHOUT
## ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

This is an appeal of a contracting officer's denial of a claim by ███████████ (███████████ or appellant), alleging that it is owed $142,000.00 for extra work performed on construction Contract No. W91JA4-12-C-7131 in Kabul, Afghanistan. In its complaint, appellant states that it presented a quote for $142,000.00 to the contracting officer's representative, received verbal direction from the contracting officer's representative to perform the work and a promise that the contracting officer would issue a modification for $144,000.00 but appellant never received the modification or funds. The government moves for summary judgment because appellant signed a final release and received final payment after executing a final release. We grant the government's motion and deny the appeal.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 5 July 2012, the Phoenix Regional Contracting Center, Camp Phoenix, Afghanistan (the government) executed Contract No. W91JA4-12-C-7131, to construct and provide building upgrades for the Afghan National Police and Central Unit Headquarters, for $1,897,160.17 to ███████████ (R4, tabs 1-4).

2. Federal Acquisition Regulation (FAR) 52.232-5, PAYMENTS UNDER FIXED –PRICE CONSTRUCTION CONTRACTS (SEPT 2002), was incorporated by reference in the contract (R4, tab 1 at 23). Regarding final payments, FAR 52.232-5 states:

> (h) *Final payment*. The Government shall pay the amount due the Contractor under this contract after—

(1) Completion and acceptance of all work;

(2) Presentation of a properly executed voucher; and

(3) Presentation of release of all claims against the Government arising by virtue of this contract, other than claims, in stated amounts, that the Contractor has specifically excepted from the operation of the release.

3. On 14 July 2012, the government issued the notice to proceed to commence work within 10 days and complete the project within 210 calendar days (R4, tab 13).

4. Over the next several months, the government administered the contract. The parties executed modifications to extend the contract or to add additional work. ███████████ billed for partial payments and the government paid appellant for work performed. (R4, tabs 15-72)

5. On 4 November 2013, the government signed a material inspection and receiving report, documenting that Contract No. W91JA4-12-C-7131 was complete and accepted, and that ███████████ was owed the amount of AFN 25,831,477.58 (R4, tab 75).

6. Also on 4 November 2013, ███████████ completed a new Electronic Funds Transfer form to update banking and payment information (R4, tab 76).

7. Also on 4 November 2013, ███████████ submitted Invoice No. WSCC0003 for Contract No. W91JA4-12-C-7131. This invoice was marked as a final payment and contained release of claims language:

> **Release of Claims:** Know all men by these presents, in consideration of the premise and sum of AFN 94,966,372.58 of which AFN 69,134,895.00 has been paid, and a balance due of AFN 25,831,477.58 is to be paid by the United States Government under the above noted contract, the undersigned contractor does release and discharge the Government, its officers, agents and employees, of and from all liabilities, obligations and claims whatsoever in law and equity arising out of or by virtue of said contract, except specified claims in stated amounts, or in estimated amounts when the amounts are not susceptible of exact statement by the contractor, as follows.

(R4, tab 77) The outstanding claims section was left blank and the box beside "None" was checked. ███████████ signed the final release as CEO and President. (*Id.*)

8. On 14 November 2013, the government issued Modification No. P00007 to decrease the DBA insurance to match the actual amount (R4, tab 80).

9. On 12 December 2013, after two rounds of modifications of the final invoice due to rejections from the Defense Finance and Accounting Service (DFAS) to correct minor clerical errors, ████████████ submitted the amended final invoice. This invoice again contained the release language and no exceptions. (R4, tab 110)

10. On 30 December 2013, DFAS Rome made final payment to ██████████ in the amount of AFN 25,831,477.58 (R4, tab 86).

11. On 7 January 2014, the government executed a DD Form 1594, Contract Completion Statement reflecting that final payment had been made on 30 December 2013 (R4, tab 87).

12. On 24 June 2016, ████████████ filed an appeal to the Board for $142,000.00 for extra work on Contract No. W91JA4-12-C-7131, which was docketed as ASBCA No. 60644 (R4, tab 88).

13. On 8 August 2016, the government filed a motion to dismiss ASBCA No. 60644 because ████████████ had not submitted a claim to the contracting officer.

14. On 6 October 2016, ████████████ submitted a certified claim to the contracting officer in the amount of $144,000.00. ████████████ claimed that the contracting officer's representative directed and approved work for the subject matter of a $142,000 quote. ████████████ stated it was informed that the contracting officer would issue a modification for $144,000. (R4, tab 94)

15. On 8 November 2016, the Board dismissed ASBCA No. 60644 for lack of jurisdiction because ████████████ did not submit a claim to the contracting officer prior to filing the appeal. ████████████████████████████████, ASBCA No. 60644, 16-1 BCA ¶ 36,556.

16. On 18 November 2016, ████████████ objected to the ASBCA No. 60644 decision and explained, "We did forget to check our record for this contract." ████████████ also stated that it signed the final release in error. (R4, tab 96 at 4)

17. On 25 January 2017, the contracting officer issued a final decision, denying the 6 October 2016 claim (R4, tab 97).

18. On 20 February 2017,  filed a timely notice of appeal with the Board from the 25 January 2017 final decision, which was docketed as ASBCA No. 61065.

19. On 12 May 2017, the government filed a motion for summary judgment contending that ▮▮▮▮▮▮▮ filed the claim after it executed a final release and received final payment.

20. The Board provided ▮▮▮▮▮▮▮ several opportunities to respond to the government's motion for summary judgment but only received electronic mail requesting that the parties conduct a joint site inspection in Afghanistan. The Board sent ▮▮▮▮▮ correspondence, allowing it additional time to respond to the government's motion. On 29 August 2017, the Board informed ▮▮▮▮▮ that it would not be conducting a site visit but that ▮▮▮▮▮ could submit photographs or any other documents to explain what it would like the Board to see during a site visit and further instructions for responding. The Board allowed ▮▮▮▮▮ until 19 September 2017 to respond. ▮▮▮▮▮ did not respond. (Bd. corr. file)

## DECISION

It is well settled that summary judgment is appropriate where the moving party establishes that there are no disputed material facts, and the moving party is entitled to judgment as a matter of law. *Riley & Ephriam Constr. Co. v. United States*, 408 F.3d 1369, 1371-72 (Fed. Cir. 2005); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). When considering summary judgment motions, "the evidence of the non-moving party is to be believed, and all justifiable inferences are to be drawn in his favor." *Tri-County Contractors, Inc.*, ASBCA No. 58167, 13 BCA ¶ 35,310 at 173,346 (citing FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). There is no genuine dispute as to any of the material facts set forth in our SOF.

The government's motion for summary judgment is based on ▮▮▮▮▮ executing a final release and receiving final payment. "A final release followed by a final payment to a contractor generally bars recovery of the contractor's claims under the contract except for those excepted on the release." *Tri-County Contractors*, 13 BCA ¶ 35,310 at 173,346 (citing *Mingus Constructors*, 812 F.2d at 1394). "It is well settled, however, that there are special and limited situations in which a claim may be prosecuted despite the execution of a general release." *Bender Shipbuilding and Repair Co.*, ASBCA No. 41459, 91-3 BCA ¶ 24,230 at 121,186. These special and limited situations include mutual mistake, continued consideration of a claim after the execution of the release, fraud, or duress. *Id.* (citing *J.G. Watts Construction Co.*

4



*v. United States*, 161 Ct. Cl. 801, 806-07 (1963)). None of the exceptions apply in this case so the general rule governs.

Here, the parties clearly closed out the contract, ████████████ executed a final release, and the government made final payment. Several documents recorded completion of the contract, including the final release and multiple submissions for final payment. (SOF ¶¶ 5-10) ████████████ submitted a final invoice with a signed final release which did not expressly except any claims and affirmatively checked the "None" box indicating that it had no excepted claims (SOF ¶ 7). ████████████ had several opportunities to notify the government of additional work that had not been included in the contract prior to the final release and final payment (*see* SOF ¶¶ 5-10). However, ████████████ failed to raise the issue until June 2016 when it submitted its claim directly to the Board.

Had ████████████ responded in this appeal, it might have asserted that it was entitled to recovery because of a mistake in signing the final release, much like it did when it objected to our decision in ASBCA No. 60644 (SOF ¶ 16). Unfortunately for ████████████, in order to benefit from the special and limited situation of mistake, the mistake must be mutual. *See, e.g., J.G. Watts Construction*, 161 Ct. Cl. at 806-07 (listing several examples of mutual mistakes). Here, the mistake, if valid, is solely on the part of ████████████ and was not discovered until years after the final release and final payment were complete. Therefore, ████████████ cannot benefit from one of the special and limited exceptions to the general rule that a final release generally bars recovery of claims made after the release has been executed.

Finally, in its complaint, ████████████ stated that the government was aware of the additional work and, thus, might have argued that the claim was excepted due to the government's knowledge. We have previously held that "final payment does not bar a claim where the contracting officer knows that the contractor is asserting a right to additional compensation, even though a formal claim has not been filed." *Matcon Diamond, Inc.*, ASBCA No. 59637, 15-1 BCA ¶ 36,144 at 176,408. However, ████████████ did not provide any evidence to support its assertion that the government had knowledge of the claim and the record in this appeal does not reflect that the government was aware of the claim for $142,000.00 of additional work. Thus, ████████████ was required to list the claim as an exception in the final release in order to maintain its rights to the claim after final release, which it did not.

5

## CONCLUSION

The government's motion for summary judgment is granted. The appeal is denied.

Dated: 14 November 2017

<br>

HEIDI L. OSTERHOUT
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

<br>

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61065, Appeal of ███████████, ██████████████████, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

6