# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Merrick Construction, LLC ) ASBCA No. 60906
)
Under Contract No. W912P8-08-D-0038 )

APPEARANCE FOR THE APPELLANT: Michael S. Blackwell, Esq.
Shields Mott L.L.P.
New Orleans, LA

APPEARANCES FOR THE GOVERNMENT: Thomas J. Warren, Esq.
Acting Engineer Chief Trial Attorney
William G. Meiners, Esq.
Engineer Trial Attorney
U.S. Army Engineer District, New Orleans

## OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS ON THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT

Appellant, Merrick Construction, LLC. (Merrick), appeals from a contracting officer's final decision denying its claim in the amount of $203,015.82 for rental costs for a bypass pumping system installed pursuant to a government change order. Respondent, the United States Army Corps of Engineers (government or Corps) moves for summary judgment, asserting that Merrick's claim is precluded by the general release signed by Merrick's vice president. The Corps additionally argues that there is an accord and satisfaction based upon a modification to the contract and that Merrick's claim is precluded because it was filed after final payment on the contract. For the reasons set forth below, we grant the Corps' motion for summary judgment.

## STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

On 8 April 2008, the Corps awarded Multiple Award Task Order Contract (MATOC) No. W912P8-08-D-0038 for construction services to Merrick (R4, tab 17). No construction services were actually procured at the time of award, but, as one of multiple awardees of the MATOC, Merrick was eligible to submit offers in response to subsequent task order solicitations issued under the contract. On 10 April 2009, the Corps awarded MATOC Task Order 0002, to Merrick (R4, tab 16). The task order involved construction work on a hurricane protection levee near New Orleans, Louisiana (id.). The contract contains the Federal Acquisition Regulation (FAR) 52.243-4(f), CHANGES (JUN 2007) clause, providing that "[n]o proposal by the

Contractor for an equitable adjustment shall be allowed if asserted after final payment under this contract" (R4, tab 17 at 104-05).

On 25 March 2011 the Corps issued a unilateral change order, designated as CO-013 (Modification No. 1Z), for the installation of a 300 cubic feet per second bypass pumping system at the construction site. The change order required the installation, operation and monitoring of a temporary "bypass pumping system." The change order provided that the "Bypass Pumping System Rental" would be paid for on a "unit price per month" and, that the contract price was presently unchanged, but that a formal modification would later be issued with an agreed-to price. (R4, tab 8 at 1, 5, 9)

The pumping equipment was delivered to the job site on 6 July 2011, and was operational by 18 July 2011 (R4, tabs 9-10). Following testing of the flow rate, the pumps were provisionally accepted on 10 August 2011, and fully accepted on 11 August 2011 (R4, tab 12).

On 19 July 2011, the Corps issued Modification No. 03, partially settling the change order for the bypass pumping system. Modification No. 03 included contract line item numbers (CLINs) for Mobilization and First Month's Rent (CLIN 0045), two months rental of the pumping system (CLIN 0046), and provided that the monthly rental for the bypass pumping system, would be $208,015.82 (R4, tab 13). On 30 March 2012, Modification No. 10 (also known as VEQ-004) added seven months rental of the bypass pumping system (gov't mot., ex. A). The rental of the bypass pumping system ended on 11 September 2012, when Merrick was directed by the Corps to shut down the bypass pumping system (R4, tab 3 at 5).

On 3 January 2013, the Corps issued Modification No. 18 (VEQ 005). It was signed on behalf of Merrick by Mr. Lemoine, and by Cynthia A. Nicholas, the government contracting officer. Modification No. 18 added an additional three months rental to the bypass pumping system. (R4, tab 14) Modification No. 18 included the following settlement language:

> This adjustment constitutes compensation in full on behalf of the contractor and its subcontractors and suppliers for all costs and markups directly or indirectly attributable to Variations in Estimated Quantities, and for all delays, impacts and extended overhead relative thereto and for performance of the change within the time frame stated.

(*Id.* at 2)

At some point after the bypass pumping system was removed, Max Merrick, the owner of Merrick, became aware of an "accounting discrepancy" regarding the

2

monthly rental charges from its subcontractor, Associated Pump & Supply Co., L.L.C. (APS) and the amounts Merrick received from the Corps (app. opp'n, ex. G). Mr. Merrick attributed the discrepancy to an overpayment by Merrick to APS. Mr. Merrick contends that the Corps agreed that the accounting discrepancy was due to APS overbilling Merrick. On 22 April 2014, Merrick filed suit against APS for return of the amount Merrick believed had been overbilled. (*Id.*)

On 23 January 2015, Mr. Lemoine, the project manager, ended his employment with Merrick, and Mr. Clay Juneau, Merrick's vice president, began overseeing completion of the project, although he had not been involved in negotiating the modifications of the contract with the Corps (app. opp'n, ex. G at 3). On 6 July 2015, Merrick submitted its final payment request in the amount of $39,496.51 (gov't mot., ex. C). On 10 July 2015, Merrick's vice president, Mr. Juneau, signed a general release document, which read as follows:

> The undersigned contractor under Contract W912P8-08-D-0038-0002 dated 4/10/2009 between the United States and the said contractor, for WBV-15b.2 Lake Cataouatche PS Fronting Protection, PS fronting protection, modification, floodwall tie-ins to the 100 year protection level., in accordance with Contract Clause, PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS, paragraph, hereby releases the United States, its officers, agents, and employees from any and all claims arising under or by virtue of said contract or any modification or change thereof, except with respect to those claims, if any, listed below....

The release document did not list any exceptions or reservations below the quoted language. (R4, tab 15) The Corps made final payment under the task order on 17 July 2015, in the amount of $39,496.51 (gov't mot., ex. F).

On 24 September 2015, during negotiations with APS, Mr. Merrick concluded that the accounting discrepancy was due to an underpayment by the Corps, rather than overbilling by APS (app. opp'n, ex. G). On 4 May 2016, Merrick filed a claim for an additional month's rent of the bypass pumping system under CLIN 0046, at the contract unit price of $208,015.82 (R4, tab 3). In a final decision dated 31 August 2016, contracting officer Michelle R. Dalmado denied Merrick's claim in its entirety based upon a finding that Merrick had released any potential claims regarding the bypass pumping system through the release in Modification No. 18, as well as the general release at final payment (R4, tab 2). Merrick subsequently timely appealed to this Board.

3

## DECISION

We will grant summary judgment if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of establishing the absence of any genuine issue of material fact, and all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987). Once the moving party has met its burden of establishing the absence of disputed material facts, then the non-moving party must set forth specific facts, not conclusory statements or bare assertions, to defeat the motion. *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626-27 (Fed. Cir. 1984).

The Corps asserts that it is entitled to summary judgment in its favor because the general release signed by Merrick's authorized representative bars Merrick's claim. In a related argument, the Corps asserts that the final release was signed as part of the contract close-out process resulting in final payment to Merrick and that Merrick's claim is also barred because it was submitted after final payment. (Gov't mot. at 7, 12) A release is a type of contract where the party granting the release "abandons a claim or relinquishes a right that could be asserted against another." *Clean by Lucy, Inc.*, ASBCA No. 58432 *et al.*, 16-1 BCA ¶ 36,287 at 176,969. Accordingly, we interpret the terms of the release like any other contract by examining the plain language of the release. *Id.* Here, Merrick released "the United States, its officers, agents, and employees from any and all claims arising under or by virtue of said contract or any modification or change thereof" and did not reserve any claims by listing them as exceptions to the release (R4, tab 15). "As a rule, a general release, whether associated with final payment or not, which is not qualified on its face, bars any claims based upon events occurring before execution of the release." *Clean by Lucy*, 16-1 BCA ¶ 36,287 at 176,970 (citing *Mingus*, 812 F.2d 1387). Thus, we find that the Corps has met its burden of making a *prima facie* case of release; however, there are exceptions to the release, such as fraud, mutual mistake, economic duress, or consideration of a claim after release. *Id.*

Merrick asserts that the general release does not bar its claim because of the Corps' superior knowledge regarding the discrepancy in rental payments, and because of mistake (app. opp'n at 10-13). Merrick's superior knowledge claim is premised on the fact that the Corps knew the duration of the rental for the bypass pumping system, was longer than the amount of time for which the Corps had compensated Merrick. Additionally, Merrick asserts that the Corps knew that the project was still being performed when Merrick's project manager left and that the Corps knew that the Merrick official that signed the release was not involved in the negotiations regarding

4

the bypass pumping system (*id.* at 11). Merrick's argument is entirely speculative and does not cite to any evidence that the Corps "knew or should have known" Merrick's version of the facts. Here, Merrick relies upon its proposed interpretation of the contract and modifications as establishing a "fact" that it is owed another month of rental costs, and that this "fact" was known to the Corps at the time the general release was signed. However, Merrick's own declaration in opposition to the motion for summary judgment asserts that it was not aware of the fact that the accounting discrepancy was due to alleged underpayment by the Corps until 24 September 2015 – two and one-half months *after* Merrick signed the general release. Thus, Merrick's argument is that the Corps must have known that it undercompensated Merrick even though Merrick itself was unaware of this fact at the time. Moreover, Merrick's argument is supported solely by unsworn statements of counsel. Merrick does not cite to any documents or communications between Merrick and the Corps, or within the Corps, demonstrating knowledge on the part of the Corps, that the Corps has not compensated Merrick fully for Merrick's rental costs for the bypass pumping system. Instead, Merrick asserts that the Corps' knowledge that Merrick was bringing suit against APS must mean that the Corps knew or should have known that Merrick had a claim against the Corps that it intended to preserve. We find that Merrick has not established a genuine issue of material fact with regard to the Corps' knowledge regarding the rental payments.*

We similarly reject Merrick's assertion that summary judgment is inappropriate due to mutual or unilateral mistake. First, Merrick's ignorance of its own claim is not the type of "mistake" that establishes an exception to the binding nature of general releases. "[W]here it is shown that, by reason of a mutual mistake, neither party intended that the release cover a certain claim, the court will reform the release." *J.G. Watts Construction Co. v. United States*, 161 Ct. Cl. 801, 806 (1963). However, here, Merrick's own declaration demonstrates that it did not know of the potential claim against the Corps and, thus, could not have intended to except it from the general release. Instead, Merrick's "mistake" argument is the type of defense that the court rejected in *J.G. Watts*, holding that "unilateral ignorance of one's legal rights where 'all the facts bearing on the existence of the injury were known' does not suffice to relieve one of the consequences of having released the claim." *Id.* at 810 (quoting *Shepherd v. United States*, 125 Ct. Cl. 724, 742 (1953)). Here, all the facts necessary to support Merrick's claim were known prior to the date of the general release, yet Merrick did not except the claim from the release it signed. Moreover, Merrick argues that the Corps knew or should have known of the potential claim. In so arguing, it seems clear that Merrick, the owner of the potential claim, also knew or should have

---

* Merrick did not file a motion pursuant to Federal Rule of Civil Procedure 56(d) seeking to obtain discovery in order to obtain facts to support its opposition to the Corps' motion.

known of its own potential claim because the government's knowledge is based on facts known equally by Merrick. Merrick is the party with the obligation to assert its own claim, not the Corps, and its failure to reserve the claim does not relieve it of the consequences of that decision.

Similarly, the Federal Circuit held in *Mingus* that the "failure by the contractor to keep adequate records to at least know the source and the amounts of its cost overruns is not a sufficient reason to entertain suits on claims otherwise released, especially when the terms of the contract require such information on the mandatory release at the end of the project." *Mingus*, 812 F.2d at 1395. Moreover, as discussed above, Merrick cites to no evidence that the Corps was aware of Merrick's potential claim. To the extent Merrick is asserting unilateral mistake as a defense (app. opp'n at 12), such a claim is essentially a claim for rescission of the release. *G.M. Shupe Inc. v. United States*, 5 Cl. Ct. 662, 675 (1984). In the rare instances where rescission has been granted there were defects in the release language not present here. *Inland Empire Builders Inc. v. United States*, 191 Ct. Cl. 742, 756 (1970). Accordingly, Merrick has not asserted facts sufficient to demonstrate entitlement to an equitable remedy for unilateral mistake. Thus, we find that Merrick has not established mistake and enforce the general release.

As an alternative basis for our holding, we additionally hold that Merrick's claim is barred because it was submitted after final payment. As the general release discussed above was a prerequisite to the Corps making final payment a few days later, the facts here overlap with the arguments above. Pursuant to the Changes clause, FAR 52.243-4(f), "[n]o proposal by the Contractor for an equitable adjustment shall be allowed if asserted after final payment under the contract" (R4, tab 17 at 104-05). Claims for equitable adjustment submitted after final payment are barred. *See, e.g., Jo-Bar Manufacturing Corp. v. United States*, 210 Ct. Cl. 149, 157 (1976). Here, the Corps demonstrated that it made final payment on 17 July 2015 (gov't mot., ex. F), before Merrick discovered that it had a potential claim against the Corps (app. opp'n, ex. G), and before Merrick submitted its claim by letter dated 4 May 2016 (R4, tab 3).

Merrick argues that its claim is not barred by final payment where the "Contracting Officer knows or should know that the contactor is asserting a legal right to additional moneys under the contract" (app. opp'n at 12 (citing *Historical Services, Inc.*, DOT CAB Nos. 72-8, 72-8A, 72-2 BCA ¶ 9592 at 44,838)). In *Historical Services*, the Department of Transportation Board found that the government had required additional performance from the contractor after the purported final payment, meaning that the contract was not completed as of the date the government contended was the final payment. *Historical Services*, 72-2 BCA ¶ 9592 at 44,839-40. Here, Merrick does not allege that it performed pursuant to the contract after the date of final payment. Additionally, as discussed above, we hold that Merrick has not established that the contracting officer knew or should have known of Merrick's claim. To the

extent Merrick is arguing that the contracting officer knew of Merrick's claim against APS, such knowledge would be irrelevant to establishing that the contracting officer knew of an intent by Merrick to assert a claim against the Corps, rather than APS. Accordingly, we hold that Merrick's claim is barred by final payment. As we have determined that the Corps is entitled to summary judgment, we need not address the arguments regarding the specific release contained in Modification No. 18.

## CONCLUSION

For the reasons stated above, we grant the Corps' motion for summary judgment. The appeal is denied.

Dated: 22 March 2018

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60906, Appeal of Merrick Construction, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals