ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of -- | ) | |
| | ) | |
| Alistiqama Co. | ) | ASBCA Nos. 62501, 62502 |
| | ) | |
| Under Contract No. W56KGZ-18-F-6016 | ) | |

APPEARANCE FOR THE APPELLANT:     Mr. Mozafar Dalo
                                                              Executive Manager

APPEARANCES FOR THE GOVERNMENT:     Scott N. Flesch, Esq.
                                                                       Army Chief Trial Attorney
                                                                    Carlos S. Pedraza, Esq.
                                                                    Zachary Jacobson, Esq.
                                                                       Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE D'ALESSANDRIS

       In April 2017, appellant, Alistiqama Company (Alistiqama) of Erbil, Iraq, entered into a blanket purchase agreement (BPA) with the Army's 408th Contracting Support Brigade (Army or government), for the rental of material handling equipment and transportation services. Two task orders issued pursuant to the BPA are at issue in these appeals. Each task order provided for rental of equipment for a set number of days. Alistiqama contends, and documentary evidence demonstrates, that the Army continued to use certain of the equipment after the end of the contractual lease periods. However, as part of the contract close-out process, Alistiqama signed a release of claims for each of the task orders without exception. Thus, despite evidence that the Army failed to timely return certain equipment, we must rule in favor of the Army because Alistiqama released its contractual claims against the Army. These appeals are before us pursuant to Board Rule 12.3, Accelerated Procedure, and are being decided on written submissions pursuant to Rule 11.[1]

---

[1] On July 22, 2020, the government filed a motion for summary judgment in these appeals, and requested that further proceedings be stayed pending resolution of its motion. By Order dated July 23, 2020, we denied the government's motion to stay the proceedings and deferred consideration of the motion for summary judgment to the merits briefing. As we hold in favor of the government on the merits, we deny the motion for summary judgment as moot.

FINDINGS OF FACTS

A.     The Blanket Purchase Agreement

On April 24, 2017, the 408th Contracting Support Brigade awarded Blanket Purchase Agreement No. W56KGZ-17-A-8010 to Alistiqama, a contractor located in Erbil, Iraq (R4, tab 1 at 1, 11).  The BPA was for material handling equipment and Line Haul (transportation) services at locations in Kuwait, Iraq, and Syria (*id.* at 11-12).  The BPA authorized contracting officers assigned to the Regional Contracting Center – Operation Inherent Resolve to solicit and issue orders (*id.* at 13).

B.     Order No. W56KGZ-18-F-6016

On January 10, 2018, the Army awarded Purchase Order No. W56KGZ-18-F-6016 (Order No. 6016) in the amount of $525,502 to Alistiqama.  The performance period varied based on the contract line item, but all rental equipment was to be returned by October 8, 2018 (R4, tab 4 at 1-6).  On May 11, 2018, Alistiqama accepted Order No. 6016, which included nine contract line items for various equipment (R4, tab 4 at 1-6).  On May 13, 2018, Alistiqama submitted an invoice for Order No. 6016 in the amount of $525,502 (R4, tab 5).

On or before June 26, 2020,[2] Army Staff Sergeant Andre Furman of the 720th Contracting Team sent Alistiqama an email stating:

> Our records shows [sic] that all payments have been made and received for contract W56KGZ17A8010 / W56KGZ18F6016.  If this information is accurate, please sign and date attached document in acknowledgment that all payment has been received.  Please send a copy of the signed document to me as soon as possible.  Thank you very much. We look forward to working with you again.

(R4, tab 19 at 3)

On June 26, 2018, Alistiqama responded to the email "[k]indly see attached signed copy" and attaching a signed Release of Claims (R4, tab 19 at 3).  The release provided as follows:

> 1. RELEASE OF CLAIMS:  I hereby certify that subject Contract W56KGZ17A8010/W56KGZ18F6016 is paid in full.  I hereby release the US Government, its officers,

---

[2] The date of this email is not in the record.

2

agents and employees of and from all liabilities, obligations, claims, appeals and demand which it now has or hereafter may have, whether known or unknown, administrative or judicial, legal or equitable arising under or in any way related to the services provided.

2. Payment Amount: $525,502

(R4, tab 9)[3]  On June 27, 2018, U.S. Air Force Technical Sergeant Jonathan Bell stated on the contract completion statement that "all purchasing office actions required have been fully and satisfactorily accomplished" and that the contract file was closed as of June 26, 2018 (R4, tab 10).

Alistiqama signed the release despite the fact that the Army had not timely returned certain equipment.  For example, the first item in Alistiqama's claim is for 33 extra days rental for a 50 ton mobile crane (R4, tab 15 at 4).  The task order sets a performance period ending on April 30, 2018 for the crane (R4, tab 4 at 3).  Alistiqama's claim includes a receipt for return of the crane on June 2, 2018, or 33-days after the end of the contractual performance period (R4, tab 15 at 10).  Notably, the late return of the crane occurred over three weeks *before* Alistiqama signed the release of claims.  Similarly, a forklift was also returned on June 2, 2018, again 33-days after the end of the performance period on April 30, 2018 (R4, tab 4 at 3, tab 15 at 38).  The 13 remaining pieces of equipment in Alistiqama's claim were returned in August and each return date is supported by a vehicle inspection return form signed by an Army employee in addition to a representative of Alistiqama (R4, tab 15 at 15-21, 24, 30-32, 43, 50).

On July 2, 2018, two days after the June 30, 2018, end of the performance period for most of the remaining equipment, and a week after signing the release, Alistiqama emailed the Army asking about the equipment still operating in the field and asserting that "Cheif [sic] Johnson" had informed Alistiqama that the KLZ[4] location "is still in need of [the equipment] and the contract will be extended."  (R4, tab 20 at 1)  On July 7, 2018, the Army requested a quote from Alistiqama for rental of certain additional

---

[3] The government incorrectly asserts that the BPA and orders incorporated by reference the Release of Claims clause contained in Federal Acquisition Regulation (FAR) 52.212-4(i)(7), CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (JAN 2017)(Alternative I) (gov't br. at 3, 5).  The BPA actually contains full text of FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (JAN 2017), that does not contain the release of claims provision (R4, tab 1 at 33), and was in turn incorporated into the orders by reference (R4, tab 4 at 10, tab 6 at 4).

[4] The acronym KLZ is not defined in the record, but appears to be the Kobani Landing Zone near Kobani, Syria.

3

equipment, similar, but not identical, to the equipment involved in Alistiqama's claim, for the period of July 1, 2018 to August 30, 2018 (R4, tab 20 at 3-4). Alistiqama submitted its quote that same day (R4, tab 20 at 3-4). The record does not indicate any further action on the quote, but includes an email from Alistiqama on July 19, 2018, again indicating there was still equipment with "their contracts [] expired but still operating in KLZ and FBS.[5] Please be informed that, we have informed the previous contracting office and Chief Johnson many times about the issue and we would like to request a meeting to address this particular issue in any time that is good for you" (R4, tab 20 at 5).

By letter dated January 11, 2020, Alistiqama submitted a claim seeking $41,889.25 for Order No. 6016 (R4, tab 15).

C.     Order No. W56KGZ-18-F-6021

On April 27, 2018, the Army awarded Purchase Order No. W56KGZ-18-F-6021 (Order No. 6021) in the amount of $47,721 to Alistiqama. The period of performance was from April 28, 2018 through July 31, 2018. (R4, tab 6 at 1-3) Alistiqama accepted Order No. 6021 on May 25, 2018 (R4, tab 6 at 1), and submitted an invoice in the amount of $47,721 on June 11, 2018 (R4, tab 7). On July 10, 2018, the Government paid Alistiqama the invoiced amount of $47,721 (R4, tab 11). On August 14, 2018, Staff Sergeant Furman emailed appellant, with the unsigned release attached, stating:

> Our records shows [sic] that all payments have been made and received for contract 56KGZ17A8010 / W56KGZ18F6021. If this information is accurate, please sign and date attached document in acknowledgement that all payment has been received. Please send a copy of the signed document to me as soon as possible. Thank you very much. We look forward to working with you again.

(R4, tab 19 at 4)

On August 27, 2018, Master Sergeant Darin Murakami, Contract Specialist, emailed Alistiqama regarding Order No. 6021, stating "Good afternoon, Could you please review, sign, and return the attached Release of Claims document so that we can proceed with contract closeout? Thanks in advance." (R4, tab 12 at 1) On August 28, 2018, Alistiqama signed and submitted a release for Order No. 6021. With the exception of identification of the order number[6] and the dollar amount, the release contained the

---

[5] The acronym FBS is not defined in the record, and its meaning is unclear.

[6] The release includes the contract number, but not the order number; however, the order number is identified in the email transmitting the unsigned release to Alistiqama (R4, tab 12 at 1).

4

same language as the release for Order No. 6016 (R4, tab 13).  On August 28, 2018, Major Brian Noble, Contracting Officer at the time, stated in the contract completion statement that "all purchasing office actions required have been fully and satisfactorily accomplished" and that the contract file was closed as of August 28, 2018 (R4, tab 14).

At the time Alistiqama signed the release, its equipment was still being used in the field after expiration of the contractual performance period on July 31, 2018 (R4, tab 6 at 2-3).  Alistiqama contends that all four pieces of equipment in the order were used beyond the contractual period, with return dates in January and February 2019.  As with its claim for Order No. 6016, Alistiqama included documentation for the additional charges, again including the equipment inspection reports, signed by Army employees, documenting the return dates (R4, tab 16 at 10-13).  Notably, for one piece of equipment, a fuel truck, the claim includes a memorandum for record signed by Contracting Officer MAJ John M. Hoffman, noting that the fuel truck:

> was found to be operating in Raqqa well past the period of performance.  The contract period of performance ended on 31 July 2018.  The vehicle was returned to the contractor on 18 February 2019.

(R4, tab 16 at 12)

By letter dated January 11, 2020, Alistiqama submitted a claim letter for a total of $87,497.49 for Order No. 6021 (R4, tab 16 at 3).

### D.     Contracting Officer's Final Decision

On February 24, 2020, Major Jaren B. Glover, the Contracting Officer, notified Alistiqama that its claims regarding Order Nos. 6016, 6021, and 0003[7] dated January 11, 2020, but received on February 1, 2020, were denied because Alistiqama released the government from all claims on the contracts (R4, tab 17 at 1).  On May 6, 2020, Alistiqama specifically appealed the denial of Order Nos. 6016 and 6021 (omitting Order No. 0003) to the Board, which was docketed as ASBCA Nos. 62501 and 62502 respectively.

### DECISION

By request of the parties, this appeal is being decided pursuant to Board Rule 11, "Submission Without a Hearing."  Unlike a motion for summary judgment, which must

---

[7] The final decision also denied Alistiqama's claim pertaining to a third Task Order, No. W56KGZ-18-F-0003 (Order No. 0003).  As the denial of this claim was not part of the May 6, 2020 appeal, it is not before the Board.

be adjudicated on the basis of a set of undisputed facts, pursuant to Board Rule 11, the Board "may make findings of fact on disputed facts." *Grumman Aerospace Corp.*, ASBCA No. 35185, 92-3 BCA ¶ 25,059 at 124,886 n.13.

Alistiqama, appearing pro se, contends that the Army continued to use the rented equipment after the contract performance period and seeks payment at the contractual rate for each day until the equipment was returned (compl. at 1).[8] Alistiqama contends that it sent emails to the Army as the equipment neared the end of the contract performance period, but that the Army replied that the equipment "was still in use and was needed to finish the job in Syria" (*id.*). Alistiqama contends that it requested that the contract be extended or that a new contract be issued for the additional time (*id.*). Alistiqama further contends that it signed the releases because "we were directed to by email from the contracting office or failure to sign would automatically close out contract. Alistqama opted to sign the contracts and collected the money guaranteed by the contract while the equipment remained in operation in Syria" (*id.*).[9]

The government does not address the merits of Alistiqama's claims, except to argue that Alistiqama "has failed to substantiate its claim with any evidentiary proof, such as documentation or affidavits – as appellant has failed to meet its burden to support its quantum claim" (gov't br. at 7). As noted above in the facts, Alistiqama's claim demonstrates that the government failed to return certain equipment at the end of the

---

[8] Alistiqama filed essentially identical complaints in ASBCA Nos. 62501 and 62502, differing only in the order number, details of the number of days of additional equipment use, and the amount of the claim. We cite to the complaint in ASBCA No. 62501.

[9] Alistiqama did not file a Rule 11 brief in accordance with the Board's scheduling order. We permitted Alistiqama additional time to file a brief or to show cause why its appeal should not be dismissed for failure to prosecute its claims. On September 27, 2020, Alistiqama sent the following response:

> Dear Sir/Ma'am, We acknowledge all documents that was sent via dropbox is correct. This all the documents we have. We took time in responding because we still waiting for the 3rd claim which is also connected in the same time and same people involved. Attached Claim for W56KGZ-17-A-8010-W56KGZ18F0003  Any information required we are happy to provide or if this is not possible you can advise. Looking forward hearing from you. Regards, Mahnaz

(App. br. at 1) (syntax in original)  The email attached a copy of Alistiqama's claim pertaining to Order No. 0003. We treat this communication as Alistiqama's Rule 11 Brief and refer to Alistiqama's complaints for further explanation of its arguments.

lease periods, including a fuel truck that was "found to be operating in Raqqa well past the period of performance" and was returned to Alistiqama six and a half months after the end of the contract performance period (R4, tab 16 at 12). The government does not dispute Alistiqama's claims with regard to the pieces of equipment that were not returned at the end of the contract performance period, the number of days after the end of performance that each piece of equipment was returned, or the daily rate for each piece of equipment, pursuant to the orders. On the record before us, we find that Alistiqama has established entitlement to the claimed amounts, subject to the government's contractual defenses.

As noted in the findings of fact, Alistiqama executed releases of claims for both task orders. We give the releases of claims their intended effect, and hold that Alistiqama has released the government from liability with regard to the claims at issue in these appeals, and deny the appeals. Final payment and release of claims is an affirmative defense and the government, rather than Alistiqama, bears the burden of proof. *Matcon Diamond*, *Inc.*, ASBCA No. 59637, 15-1 BCA ¶ 36,144 at 176,408 (citing *Electro-Tech. Corp.*, ASBCA No. 42495, 93-2 BCA ¶ 25,750 at 128,133). The Board has consistently held that final release and final payment "to a contractor generally bars recovery of the contractor's claims under the contract except for those excepted on the release." *Wash. Star Constr. Co.*, ASBCA No. 61065, 17-1 BCA ¶ 36,913 at 179,846 (quoting *Tri-County Contractors*, ASBCA No. 58167, 13-1 BCA ¶ 35,310 at 173,346). Here, Alistiqama, did not reserve any claims when it signed the releases (R4, tab 9 (Order No. 6016), tab 13 (Order No. 6021)). Moreover, Alistiqama knew when it signed the releases that some of its equipment had not been returned (R4, tab 15 at 10, 38, tab 16 at 10-13).

The Board has previously held that there are "special and limited situations in which a claim may be prosecuted despite the execution of a general release." *Bender Shipbuilding and Repair Co.*, ASBCA No. 41459, 91-3 BCA ¶ 24,230 at 121,186. These exceptions include: a mutual mistake where neither party intended to release a certain claim; where the parties' post release conduct indicates that the parties did not intend to abandon the claim; where the inclusion of a claim in a release was an obvious mistake; in situations involving fraud or duress, (*id*. (citing *J.G. Watts Constr. Co. v. United States*, 161 Ct. Cl. 801, 806-07 (1963))); and when "the contracting officer knows that the contractor is asserting a right to additional compensation, even though a formal claim has not been filed." *Matcon Diamond*, *Inc.*, 15-1 BCA ¶ 36,144 at 176,408 (citing *JT Constr. Co.*, ASBCA No. 54352, 06-1 BCA ¶ 33,182 at 164,464). We find that none of these exceptions apply.

In its complaint, Alistiqama asserts that the government told it, to sign the contract close-out documents because if Alistiqama failed to sign the documents, the government would automatically close the contracts, and that Alistiqama elected instead to collect the money guaranteed by the contract (compl. at 1). To the extent Alistiqama is arguing

7

duress, we find that Alistiqama has not demonstrated the existence of duress. Alistiqama relies solely upon unsworn statements in its complaint, and has not provided any declarations in support of its allegations or copies of email communications with the government to support its argument. The communications contained in the record do not support the existence of duress. The communications contained in the record simply provide that the government was of the belief that all payments have been made and requested that "[i]f this information is accurate, please sign and date attached document in acknowledgment that all payment has been received" (R4, tab 19 at 3 (Order No. 6016), 4 (Order No. 6021)).[10] Thus, there is no "proof of wrongful action by the government" that would be required to establish duress or coercion. *Rumsfeld v. Freedom NY*, *Inc.*, 329 F.3d 1320, 1330 (Fed. Cir. 2003). Here, there is no evidence that Alistiqama attempted to reserve its potential claims from the release, either orally or in writing, and thus, there is no evidence of duress or coercion. *Prime Roofing*, *Inc.*, ASBCA No. 35630, 90-1 BCA ¶ 22,533 at 113,078. Accordingly, we hold that Alistiqama has not established the existence of duress. Additionally, there is no record evidence that the contracting officer was aware that Alistiqama was asserting entitlement to additional compensation at the time the release was executed.

Additionally, we note that Alistiqama's release would not bar claims based upon a subsequent contract, either by extension of the existing contract after the date of the release, or by an implied-in-fact contract. The government did not address this issue in its brief. To the extent Alistiqama is alleging a subsequent contract in its statement that it requested that the contract be extended or that a new contract be issued for the additional time (compl. at 1), there is no evidence in the record supporting the existence of a subsequent modification or extension. The only evidence in the record supporting such a claim is a July 2, 2018 email to the Army asking about the equipment still operating in the field and asserting that "Cheif [sic] Johnson" had informed Alistiqama that the KLZ location "is still in need of [the equipment] and the contract will be extended." (R4, tab 20 at 1) The Army subsequently requested that Alistiqama provide a quote for an additional rental term, but there is no evidence that an order was issued or that the existing orders were modified to extend the performance period (R4, tab 20 at 3-4).

In order to establish the existence of an implied-in-fact contract with the United States, Alistiqama would need to establish the same elements as for a written contract: 1) mutuality of intent to contract; 2) consideration; 3) unambiguous offer and acceptance; and 4) actual authority on the part of the government representative whose conduct is relied upon. *See*,

---

[10] The record contains an email message, pertaining to Order No. 0003, where the government requested that Alistiqama sign and return a release and providing that "[i]f I have not heard back by 25 June 2018 then I will proceed with closeout" (R4, tab 19 at 2). This order is not before the Board, but the email appears to be normal contract administration and not evidence of a threat to cancel open orders or a refusal to make any contractual payments.

*e.g.*, *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990). However, Alistiqama has not established, or even alleged, the necessary elements of an implied-in-fact contract. Even assuming that Chief Johnson told Alistiqama that the contract would be extended (R4, tab 20 at 1), there is no evidence in the record that Chief Johnson was a contracting officer with authority to bind the government, or that there was a clear and unambiguous offer and acceptance. Accordingly, we hold that Alistiqama has not established the existence of a contract extension or a new contract.

CONCLUSION

For the reasons stated above, Alistiqama's appeals are denied.

Dated: October 27, 2020

DAVID D'ALESSANDRIS
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62501, 62502, Appeals of Alistiqama Co., rendered in conformance with the Board's Charter.

Dated: October 28, 2020

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals